MINKOFF v. PAYNE et al.

No. 11444.

United States Court of Appeals, District of Columbia Circuit.

Argued June 9, 1953.

Decided Nov. 5, 1953.

**690**

Mr. Harry I. Rand, with whom Mr. Joseph A. Kaufmann, Washington, D. C., was on the brief, for appellant.

Mr. Chester H. Gray, Principal Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, and Robert D. Wise, Asst. Corp. Counsel, and Edward A. Beard, Asst. Corp. Counsel at the time

the brief was filed, were on the brief, for appellees.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

The appellant, Hyman Minkoff, sued in the District Court to enjoin the members of the Alcoholic Beverage Control Board[1] from putting into effect a decision to deny renewal of his Retailer's Class "A" license for the year beginning February 1, 1951.[2] The complaint alleged that since 1937 appellant had conducted an alcoholic beverage business under yearly licenses expiring on the 31st of January each year. Further allegations made a case of very substantial injury to appellant if his established business were terminated by failure to obtain the renewal. A temporary restraining order of the District Court prohibited interference with appellant's business pendente lite.[3] Defendants filed a motion to dismiss or, in the alternative, for summary judgment, accompanied with a copy of the transcript of the proceedings before the Board. These show that the Board's denial of the license rests upon its conclusion that it "is unable to satisfy itself that the applicant is of good moral character and generally fit for the trust to be in him reposed", a statutory prerequisite to the granting of a license, § 25–115(a) (1), D.C.Code (1951).

The Board proceedings show also that the bases for its adverse conclusion are its findings that several years previously appellant, in violation of Title 26, § 2857(a) of the Internal Revenue Code, 26 U.S.C.A. § 2857(a), had made false and fraudulent entries in his business books and records, had conspired with bootleggers operating out of North Carolina not to make required entries in certain circumstances, and, pursuant to said

1. See § 25–104, D.C.Code (1951).

2. Title 25, D.C.Code (1951), makes no reference to the "renewal" of a license. In terms of the statute the denial here was of an application for a license. We refer to the action as the denial of a renewal because in substance it was that.

3. Without objection from appellees like relief has remained in effect pending the appeal.

conspiracy had failed to make entries required by § 2857(a).

The complaint alleged discrimination, and appellant filed with the District Court an affidavit to the effect that in no other instance had the Board revoked, suspended for over 30 days, or failed to renew, a license for violation of those provisions of local statute and regulations which most nearly resemble the cited provisions of the Internal Revenue Code.

On consideration of the record made before the Board, the pleadings filed in court,[4] and plaintiff's said affidavit, the District Court granted defendants' motion for summary judgment.

■■ The use of the summary judgment procedure was appropriate. In placing the issuance of licenses in the hands of the Board the statute, § 25–106, D.C.Code (1951), provides that its "action * * * on any question of fact shall be final and conclusive * * *", subject, in certain instances not here applicable, to review by the Commissioners of the District of Columbia.[5] Accordingly, the question before the court was whether the findings of the Board were so arbitrary or capricious, or so unsupported by evidence, as to be unwarranted as matter of law. If the court was correct in not overturning the findings, and if there was no genuine issue of material fact as to discrimination, the case was properly resolved by summary judgment procedure. National Broadcasting Co. v. United States, 319 U.S. 190, 227, 63 S.Ct.

997, 87 L.Ed. 1344; Fields v. Hannegan, 82 U.S.App.D.C. 234, 162 F.2d 17, certiorari denied, 332 U.S. 773, 68 S.Ct. 88, 92 L.Ed. 358; Wawa Dairy Farms v. Wickard, 3 Cir., 149 F.2d 860, 864; Rule 56(c), Fed.R.Civ.P., 28 U.S.C.A.

Neither the complaint nor the affidavit required a different procedure due to their allegations of discrimination. Each failed to raise an issue of fact in that regard. It does not appear from the complaint or, as the District Court pointed out, from the evidence before the Board, that in any instance relied upon to show discrimination there was a conspiracy such as the Board found in this case. This is as true of the affidavit as of the evidence.

■ We turn, then, to consideration of the evidence before the Board to determine whether, in the light of the statutory criteria for issuance of a license, the findings of the Board were properly upheld by the District Court. We have pointed out that under the statute the Board must satisfy itself that the applicant is of good moral character and generally fit for the trust to be in him reposed, § 25–115(a) (1). A decision of the Board on this question may not be arbitrary or capricious. It must be based upon substantial evidence. Moreover, when, as in this case, the Board action amounts to a refusal to renew a license previously issued it must be based upon evidence which the applicant had full opportunity to refute.[6]

4. A supplemental complaint alleged that the expiration date of the requested renewal license, January 31, 1952, had passed, prior to which plaintiff had applied for renewal as if the same had been granted on February 1, 1951, so as to preserve his standing before Board and court.

5. Had the Board's proceedings been to revoke or suspend appellant's license, he would have been entitled to review by the Commissioners. The question whether the Board properly followed the procedure prescribed for application for a license rather than that for the revocation or suspension of an existing license is considered hereinafter.

6. The requirements as to procedural due process within the principles laid down in In re Carter, 85 U.S.App.D.C. 229, 177 F.2d 75, certiorari denied sub nom. Laws v. Carter, 338 U.S. 900, 70 S.Ct. 250, 94 L.Ed. 554, and particularly in In re Carter, 89 U.S.App.D.C. 310, 192 F.2d 15, certiorari denied, 342 U.S. 862, 72 S.Ct. 89, 96 L.Ed. 648, were met. This is not disputed, although it is argued that appellant's cross-examination of one of the bootleggers, as to bias, was unduly restricted by the Board. We have examined this contention and conclude that the facts were sufficiently brought out to preserve the hearing from unfairness by reason of limitation upon cross-examination.

■ At the hearing before the Board[7] a number of witnesses of unquestioned credibility testified to the good moral character and general fitness of appellant. But there was evidence that he had engaged in specific instances of conduct, the violations of law mentioned above, inconsistent with the good moral character and fitness required of one who assumes the very real public responsibility incident to the business of selling alcoholic beverages. It is true there was conflicting testimony by appellant and the bootleggers as to the alleged conspiratorial plans, and it is true also that the bootleggers were to be deemed accomplices and co-conspirators for the purpose of viewing their testimony with caution. Nevertheless the Board could honestly and reasonably have believed the evidence of alleged conspiracy, and failure to keep records pursuant to it. It was therefore within the province of the District Court to refuse to set aside the action of the Board. As the court said of the circumstances presented, "it is not for this Court to weigh the evidence and determine what its conclusion would have been." The resolution of the facts by the fact-finding Board was not arbitrary, capricious, discriminatory or so lacking in evidentiary support as to be erroneous in law. Furthermore, we have no reason to suppose the court departed from the standards for review set forth in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, relied upon by appellant. While the question of moral character and fitness is indeed not an ordinary factual one and definitely involves the exercise of judgment, it is within the factual rather than the legal realm. See Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 181 F.2d 280. The record does not afford a solid basis for court disagreement with the findings and conclusions reached by the public agency charged with primary responsibility for the relevant determinations, though a different result might reasonably have been reached, as shown by the dissent of one member of the Board.

■ Appellant urges that it was erroneous for the Board to rest its decision in part upon the compromise of the criminal charges, said to be irrelevant and to give no support for the ruling. See note 7, supra, and note 8, infra. Though it is questionable whether the compromise alone would constitute substantial evidence sufficient to sustain the findings of the Board,[8] consideration of it along with the ample testimony of the alleged bootleggers did not deprive the Board's findings of validity. It was not merely an offer of compromise but a consummated settlement, and full opportunity was accorded appellant to explain it.

■■ After the case was argued and submitted in this court we requested and received memoranda from the parties on the question whether or not it was error for the Board to use the procedure applicable to an application for a license, rather than that prescribed for revocation or suspension of one already issued. The difference is important; for when the Board revokes a license or suspends one for a period of more than 30 days its decision is reviewable by the Commissioners of the District of Columbia, an administrative review not available when an application for a license is denied. § 25–106. Upon careful consideration we have concluded that the application

7. The hearing was initiated by the Board, on notice, because of its receipt of information that the appellant had committed the violations of law already adverted to and had been indicted, followed by dismissal of this criminal action upon payment to the United States of $1,000 in compromise.

8. The United States Attorney in recommending to the Attorney General the acceptance of the compromise wrote that the Federal Government had not been defrauded, as all taxes and license fees, both Federal and local, had been paid by the accused, "and the failure to keep proper records was not with the intent to defraud the Government of taxes or fees."

procedure was proper. It seems clear from the statute, particularly § 25–114, that Congress intended these licenses to be issued only for a year at a time. This no doubt was to afford a means of continuing supervision. There accordingly comes into operation at the time of each renewal the qualification provision of § 25–115, supra, requiring the Board to be satisfied as to the good moral character and fitness of an applicant. A further indication that it was the intent of Congress that the procedure for license renewal should be the same as for an application is the language of § 25–115(b) qualifying the notice requirements for an application for an original license:

> "* * * The provisions of this subsection relating to notice by advertisement in some newspaper of general circulation shall not apply to the issuance of a license to a retailer for any place of business if such retailer is the holder of a license of the same class for the same place and if said last-mentioned license is in effect on the date the application for the new license is filed."

Similarly, the provisions of § 25–115(c) relative to the filing of objections by neighboring real estate owners are expressly made inapplicable to applications by existing licensees. That no other exception is made in their favor indicates that in other respects proceedings for renewal should conform with those for an original application. We see no escape from the conclusion that the same qualifications required for an original license remain for Board consideration as recurring applications for renewals or new licenses are made. This being so the provisions for review by the Commissioners, applicable in terms only when the Board revokes or suspends a license, were unavailable to appellant. Due to the scope of those review provisions, § 25–118, sound policy might well call for like administrative remedy when a renewal is denied to one who has long been licensed on an annual basis and has a well established business; for such a denial amounts to a revocation. But the problem is one for Congress. In view of the statutory scheme the court would not be justified in supplying by interpretation the omission of provision for review by the Commissioners in such a case, anomalous though the omission might appear to be.

In affirming the judgment we do so without prejudice to consideration by the Board of any application for a new license which the appellant might file or have pending. The findings which led to the Board action relate to conduct which terminated more than four years ago. The moral character and fitness of the appellant are not necessarily predetermined forever by what then was found to have occurred. Though we affirm and will cause to be dissolved, when our mandate issues, all existing stays or injunctions against the Board, we do not preclude the current exercise of its judgment with respect to appellant should it have occasion to do so.

Affirmed.