**Samuel M. SELDEN et al., Appellants,**

v.

**CAPITOL HILL SOUTHEAST CITIZENS ASSOCIATION et al., Appellees.**

**Theodore I. COE et al., Appellants,**

v.

**CAPITOL HILL SOUTHEAST CITIZENS ASSOCIATION et al., Appellees.**

**The WASHINGTON TERMINAL CO., Inc., The Real Estate and Improvement Company of Baltimore, Appellants,**

v.

**CAPITOL HILL SOUTHEAST CITIZENS ASSOCIATION et al., Appellees.**

**Nos. 12088, 12089, 12091.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 8, 1954.

Decided Dec. 23, 1954.

Petition for Rehearing Denied Jan. 17, 1955.

---

Messrs. Roy St. Lewis and Carl L. Shipley, Washington, D. C., were on the brief, for appellants Selden et al.

Mr. John A. Earnest, Asst. Corporation Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, Chester Gray, Principal Asst. Corporation Counsel, Milton D. Korman and Harry L. Walker, Asst. Corporation Counsel, Washington, D. C., were on the brief, for appellants Coe et al.

Mr. John L. Hamilton, Washington, D. C., and Mr. George E. Hamilton, Jr., Washington, D. C., for appellants Washington Terminal Co. et al.

Mr. Jay T. McCamic, Wheeling, W. Va., of the bar of the Supreme Court of West Virginia, *pro hac vice* by special leave of Court, for appellees. Messrs. Howe P. Cochran and William R. Leckemby, Jr., Washington, D. C., were on the brief for appellees.

Before EDGERTON, PRETTYMAN, and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

These appeals are from a judgment setting aside an order of the Board of Zoning Adjustment of the District of Columbia. The Board's order authorized, for a two-year period, an automobile parking lot at New Jersey Ave. and D St. Southeast. The neighborhood is residential and the Board's order created an exception to zoning regulations.

The Zoning Law provides that "The regulations adopted by the Zoning Commission may provide that the Board of Adjustment may, in appropriate cases and subject to appropriate principles, standards, rules, conditions, and safeguards set forth in the regulations, make special exceptions to the provisions of the zoning regulations in harmony with their general purpose and intent. * * " D.C.Code 1951, § 5–420, 52 Stat. 799. The regulations empower the Board, among other things, to "permit, in a residental district, * * * the use of an unimproved lot for the temporary parking of motor vehicles, subject to such restrictions and safeguards as may, in the opinion of the Board, be necessary to protect the residential property in the vicinity, when such use is found to be reasonably necessary or convenient to the neighborhood, and not to interfere un-

reasonably with the most appropriate use of neighboring property under the zone plan. * * * "

■ The Board of Zoning Adjustment held extensive hearings. There was ample evidence of need for additional parking facilities in the neighborhood. The Board found unanimously that "a critical parking problem is now existing on the south side of Capitol Hill." On the other hand, there was ample evidence that the parking lot would make adjoining property less desirable for residence purposes. But a majority of the Board found that "subject to compliance with restrictions and safeguards to be made conditions of this order the use will not interfere unreasonably with the use of neighboring property under the zone plan. That it will operate as a convenience to the neighborhood as such is best indicated by the probable increase in available curb parking by reason of the additional off-street spaces provided. The granting of this appeal we believe to be in the public interest." The Board attached these conditions to its order: "(a) The lot shall be appropriately surfaced with blacktop or concrete and lighted for night use as per plan on file with the Board. (b) Planting and screening arrangement, driveways and spacing shall also be provided and maintained as per plan submitted. (c) Permit shall issue for a trial period of two years only, but shall be subject to renewal in the discretion of the Board upon a new appeal filed in the manner prescribed by law."

The District Court concluded the Board's findings were not supported by substantial evidence. The court therefore directed the Board to vacate its order. We think the court erred.

A parking lot is neither a junk yard for motor vehicles nor a place for putting them in storage. It is a "lot for the temporary parking of motor vehicles". It is the parking of the motor vehicles, not the use of the lot, that the regulation requires to be temporary. The parking problem is more critical in some neighborhoods that lack off-street parking facilities than in many downtown areas that already have them. Though the proposed facility will "interfere" with the use of neighboring property for residence purposes, the question whether it will interfere "unreasonably" can only be answered, like any other question of reasonableness, in the light of all the circumstances, and these include the "critical parking problem on the south side of Capitol Hill." There is, we think, ample room for difference of opinion on this question. The Board of Zoning Adjustment is created and qualified to decide such questions of opinion. Courts should not substitute their opinion for the Board's.

Reversed.

PRETTYMAN, Circuit Judge (dissenting).

I would affirm the judgment of the District Court in this case.

The Board of Zoning Adjustment operates under regulations prescribed by the Zoning Commission. The statute so provides.[1] It says:

"The regulations adopted by the Zoning Commission may provide that the Board of Adjustment may, in appropriate cases and subject to appropriate principles, standards, rules, conditions, and safeguards set forth in the regulations, make special exceptions to the provisions of the zoning regulations in harmony with their general purpose and intent."[2]

And the statute further provides:

"The Board of Adjustment shall not have the power to amend any regulation or map."[3]

The regulations adopted by the Zoning Commission provide as follows:

1. 52 Stat. 797 (1938), as amended, D.C. Code § 5-413 (1951); 52 Stat. 799 (1938), D.C.Code § 5-420 (1951).

2. 52 Stat. 799 (1938), D.C.Code § 5-420 (1951).

3. Ibid.

"Upon appeals the Board of Zoning Adjustment is hereby empowered to grant requests for the following special exceptions, when, in the judgment of the Board, such exceptions shall be in harmony with the general purpose and intent of the zoning regulations * * *:

\* \* \* \* \* \*

"4. Permit, in a residential district, except as hereinafter provided, the use of an unimproved lot for the temporary parking of motor vehicles, subject to such restrictions and safeguards as may, in the opinion of the Board, be necessary to protect the residential property in the vicinity, when such use is found to be reasonably necessary or convenient to the neighborhood, and not to interfere unreasonably with the most appropriate use of neighboring property under the zone plan. * * *"4

The pertinent words to be extracted from this regulation are: "The Board is empowered to permit, in a residential district, the use of an unimproved lot for the temporary parking of motor vehicles, when such use is found not to interfere unreasonably with the most appropriate use of neighboring property under the zone plan."

The Board of Adjustment has no power in respect to parking lots in residential districts, except as the power is given it in the foregoing regulation, and its authority does not go beyond the permission given it by the regulation. Two features of this regulation are absolutely violated by the order of the Board before us.

In the first place the Board was authorized to permit "temporary parking of motor vehicles" only. It has no power to permit the building of a permanent parking lot. The two things are totally different, and the regulation meant what it said. It meant to authorize the Board to permit temporary parking, and no more. The word "temporary" is used at other places in the regulations (e. g., Sec. XXIII, Part 2, pars. 5 and 6, and Sec. III, par. 13), and reference to those sections clearly shows that the word means temporary. In the order before us the Board purported to permit the construction and operation of a parking lot surfaced with blacktop or concrete and lighted for night use, with planting and driveways. To be sure, it granted the permit for two years only and so calls it a temporary parking lot, but the permit expressly says it is for "a trial period" and is subject to renewal (unrestricted as to term) at the discretion of the Board. A permanent operation is clearly contemplated. As I see it, there is not, and was not intended to be, any temporary feature about it.

The court says it is the parking of the motor vehicles that the regulation requires to be temporary. I had thought all parking of cars, in any ordinary sense of the term, is temporary. At the oral argument counsel for the District of Columbia voluntarily agreed that the regulation has always been construed as referring to the temporary use of the premises.

In the second place the Board was not authorized by the regulation to grant a permit unless the proposed use is found "not to interfere unreasonably with the most appropriate use of neighboring property under the zone plan." This is a residential district. And so the most appropriate use of neighboring property under the zone plan is for residences. It is so used. One must visualize the physical layout of this property in order to grasp the full import of what has been done here. There is a piece of land (not exactly square) bounded by four streets. Along one whole side, including the two corners, is a row of residences. On another corner is a large hotel. The property with which we are concerned is a diagonal strip, across the interior of the square, back of the residences, and between them and the rear of the hotel. The edge of this strip is along the rear

---

4.  Sec. XXIII, Part 2, of the Zoning Regulations of the District of Columbia, effective
    Sept. 1, 1953.

boundaries of the residence properties. Not one resident of the area wrote in or appeared in favor of the parking lot.

It seems to me that one could hardly imagine a use of an interior plot of land, inside a square of residential property, which would interfere more unreasonably with the use of the neighboring residences as residences, than would the operation of a paved parking lot for 134 cars, lighted at nighttime. It seems to me that a paved and lighted parking lot, occupied by 134 cars, would absolutely prevent any reasonable use whatever of these neighboring residences as residences. If that is so, the Board had no power under the regulations to grant the permit.

What I am saying might be cast in terms of support in the evidence, arbitrary action, and abuse of discretion. But the regulation is framed in terms of power, and I adhere to the plan of the regulation. If I phrased my view in the other language, I would say there is no evidence to support a finding that the proposed parking lot would not interfere unreasonably with the residential use of these neighboring residences and that the order granting the permit is arbitrary and an abuse of discretion.

My brethren place great reliance upon the findings by the Board that there is a critical parking problem on the south side of Capitol Hill. There is a critical parking problem in every spot in downtown Washington and in many spots outside the downtown area. But that is no reason for violation of zoning maps and regulations. It is no justification for permitting the invasion of every residential district by paved and lighted parking lots. Any such move would destroy the whole purpose of zoning, which is to protect each type of neighborhood in the use, and accompanying value, prescribed by the top zoning authorities, in this case the Zoning Commission, not the Board of Adjustment. Zoning is not designed for the benefit of intruders into neighborhoods; it is designed to protect the character of neighborhoods as such character either exists or develops.

I note in passing that the strip of land here involved was not technically an unimproved lot. Under its top surface it was wholly improved by a tunnel built and constantly used by the railroads. But that is a minor factor here.

I think the District Court was correct in the view and the action which it took.