**HOT SHOPPES, INC., a corporation,**
**Plaintiff,**

v.

**Robert O. CLOUSER, Samuel Scrivener, William F. McIntosh, Arthur P. Davis, William S. Harps, Individually and as Members of the District of Columbia Board of Zoning Adjustment, Defendants.**

**Civ. A. No. 1068–63.**

United States District Court
District of Columbia.

July 15, 1964.

Frank H. Strickler, White, Hart, Carmody & Wilson, Washington, D. C., for plaintiff.

James M. Cashman, Asst. Corp. Counsel for District of Columbia, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

Plaintiff, Hot Shoppes, Inc., a Delaware corporation engaging in the restaurant business in the District of Columbia, has brought this action for declaratory judgment and injunctive relief seeking judicial review of a decision of the defendants, the Board of Zoning Adjustment of the District of Columbia. The case came on for trial without a jury.

By virtue of building permits issued in March and July of 1959, plaintiff was authorized to construct a restaurant on leased property at 3250 Pennsylvania Avenue., S. E., in the District of Columbia. The restaurant, known as "Mighty Mo," has counter, table, and curb (or drive-in) service. Plaintiff commenced its operation at this location in October, 1959. The cost of the building and equipment was in excess of $200,000.

At the time the building permits were issued and for years prior thereto, § 5101.33(q) of the Zoning Regulations of the District of Columbia permitted the operation of drive-in restaurants in C-1 districts, the zoning classification of plaintiff's property. The C-1 classification consists of a neighborhood shopping center designed to accomplish two purposes: "First, it will provide convenient retail and personal service establishments for the day-to-day needs of a small tributary area, with a minimum impact upon surrounding residential development, and secondly, it will accommodate a major portion of existing strip commercial developments." § 5101.1, Zoning Regulations. On July 11, 1961, the Zoning Commission of the District of Columbia amended § 5101.33(q) of the Regulations to exclude "a drive-in type restaurant," but to include lunch counters, lunch rooms, cafes, and restaurants. From that moment on, plaintiff's restaurant, housed in a structure which fully conforms to all zoning regulations, was used for purposes which in part conformed and in part did not conform to the requirements of the Regulations: the table and counter service inside the restaurant continued to be conforming uses, but the drive-in service outside became a nonconforming use.

As a nonconforming use, the drive-in service became subject to certain limitations as well as certain protections provided by Congress:

"The lawful use of a building or premises as existing and lawful at the time of the * * * adoption * * * of any regulation adopted after June 20, 1938, * * * *may be continued* although such use does not conform with the provisions of such regulation, *provided no structural alteration, except such as may be required by law or regulation, or no enlargement is made or no new building is erected.* The Zoning Commission may in its discretion provide, upon such terms and conditions as may be set forth in the regulations, for the extension of any such nonconforming use throughout the building and for the substitution of nonconforming uses." D.C.Code § 5-419. (Emphasis added.)

The drive-in service could thus continue, but no new building could be erected to house the nonconforming use, no enlargement could be made, and only those structural alterations would be permitted "as may be required by law or regulation." The Zoning Regulations have amplified this section to mean, in part, that: "Ordinary repairs, alterations, or modernizations may be made to a: Conforming structure or portion thereof devoted to a nonconforming use provided: (a) No structural alterations are made thereto except those required by other municipal law or regulations; and (b) The nonconforming use is not extended except in accordance with Section 7105 [which provides that a nonconforming use of land may not be extended in land area and that a nonconforming use of a structure may be extended into other existing portions of the structure only if approved by the Board of Zoning Adjustment]." §§ 7106.1, 7106.11, Zoning Regs. (Definitional italics omitted.)

Part of the original structure, built in 1959, was a storage area, enclosed on

two sides by a basket weave wooden fence. This fenced-in area is adjacent to the main building. Plaintiff stored (and continues to store) "commissary carts" in this area. A commissary cart is an enclosed metal cabinet in which food supplies are transported from the Hot Shoppes' commissary to various Hot Shoppe outlets. After delivery, the carts are placed in storage until they can be picked up and returned to the commissary. The carts are thus part of plaintiff's general operations in transporting food to its various retail outlets (only one of which is involved in the present case); they are not used to transport food to automobiles, but are used to bring food to the restaurant itself, thus furthering both the conforming uses (counter and table service) and nonconforming use (drive-in service) of plaintiff's restaurant.

On July 17, 1962, after an inspection, officials of the Health Department of the District of Columbia directed plaintiff to store its commissary carts under cover. Plaintiff sought a building permit approving plans which would change the present fenced-in structure to a structure completely enclosed with four sides and a roof, and architecturally the same as the main restaurant building.

Plaintiff's request for a building permit was turned down on the ground that the proposed structure provided for the extension of a nonconforming use and was contrary to the Zoning Act and Regulations. Plaintiff appealed to the Board of Zoning Adjustment as provided in D. C.Code § 5-420. Plaintiff's case was heard on July 18, 1962 and November 14, 1962. On November 20, 1962, the Board issued an order denying the appeal. Plaintiff was notified of this action on January 15, 1963. The suit in this court followed.

The order of the Board of Zoning Adjustment makes four findings of fact, as follows: First, that under the new Zoning Regulations, the drive-in facilities of the restaurant constitute a nonconforming use; Second, that the restaurant has been directed by the Health Sanitation Department to keep its commissary carts under cover, which carts are described essentially as set forth by the Court above, including their storage in "a fenced enclosure" "[a]t the location under review * * * ;" Third, that the Zoning Act [specifically D.C.Code § 5-419, as set forth by the Court above] provides that a non-conforming use may be continued provided no structural alterations are made except such as may be required by law and regulation, or no enlargement is made or no new building is erected, and that "[i]n this case the addition contemplated constitutes an enlargement;" Fourth, that there was objection [from persons residing in the vicinity] to the granting of the appeal registered at the public hearing.

The order further specified that the above findings of fact were made "[a]s the result of an inspection of the property by the Board, and from the records and the evidence adduced at the hearing * * *."

The order then set forth the Board's "opinion":

"We find nothing in this evidence which would justify a conclusion that this nonconforming use should be treated any differently than the many thousands of such uses existing elsewhere in the District of Columbia. The allegation of hardship predicated upon a contention that the addition was required by other law or regulation is not supported by the facts. The only conclusion reached by health inspectors is that the equipment complainted [sic] of has to be under cover and not that a new addition is required to contain it. Since it is obvious that the equipment can be placed somewhere inside the existing structure or perhaps other operational arrangements made, it is our conclusion that appellant has failed to sustain its burden of proof that a hardship within the meaning of the law does in fact exist. It is our conclusion also that the relief sought cannot be granted without substantial detriment to the pub-

lic good and without substantially impairing the intent, purpose and integrity of the zone plan as embodied in the Zoning Regulations and map."

On the basis of the above findings of fact and opinion, the Board denied the appeal, with one member not voting.

■■■ The standards for judicial review of actions of the Board of Zoning Adjustment are well-settled. On the one hand, courts "should not substitute their opinion for the Board's" on questions where there is "ample room for difference of opinion." Selden v. Capitol Hill Southeast Citizens Ass'n, 95 U.S.App. D.C. 62, 64, 219 F.2d 33 (1954). And see Clouser v. David, 114 U.S.App.D.C. 12, 309 F.2d 233 (1962). On the other hand, "the reviewing court can decide whether the decision reached * * * follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence." Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 287, 96 F.2d 554, 559 (1938), specifically applied to decisions of the Board of Zoning Adjustment, Robey v. Schwab, 113 U.S. App.D.C. 241, 245 n. 11, 307 F.2d 198 (1962). The reviewing court has the responsibility of determining "whether the case has been decided upon the evidence and the law or, on the contrary, upon arbitrary or extralegal considerations." Saginaw v. FCC, supra, 68 App. D.C. at 287, 96 F.2d at 559. "The Court may set aside an action of the Board if it finds that the decision was arbitrary or capricious. * * * In their technical legal significance an administrative action not supported by evidence, or lacking a rational basis, is deemed arbitrary and capricious." O'Boyle v. Coe, 155 F. Supp. 581, 584 (D.D.C.1957). If an order of the Board "is not supported by any substantial evidence" or "was made un-

der a mistaken construction of the law * * *," the order must be set aside. Hyman v. Coe, 102 F.Supp. 254, 257 (D. D.C.1952). "The decisions of a zoning adjustment board are discretionary and should not be reversed by the Courts unless clearly arbitrary and unreasonable." Hyman v. Coe, 146 F.Supp. 24, 27 (D. D.C.1956). "Generally stated, the correctness or incorrectness of the decision of the Board is not one for judicial review if there is substantial evidence to support it and the parties have been accorded due process of law * * *." Jarrott v. Scrivener, 225 F.Supp. 827, 831 (D.D.C.1964).

Based upon these standards for judicial review and confining itself to a study of the record presented to the Board of Zoning Adjustment,[1] this Court has concluded that the order of the Board denying the appeal of plaintiff must be set aside as not supported by substantial evidence, as arbitrary and capricious, and as violative of the Zoning Regulations, the Zoning law passed by Congress, and the due process clause of the Constitution.

■■ The Board determined that the proposed new structure constitutes "an enlargement," and as such is barred by the Zoning Act, D.C.Code § 5–419, supra. There is no substantial evidence to support this finding. Uncontradicted evidence presented to the Board in the form of an affidavit by the district manager of Hot Shoppes, Inc. stated that *"the area to be occupied* by the altered structure is enclosed on two sides by a roofless structure consisting of a high basket-weave type wooden fence," (emphasis added) thus indicating that the floor area of the new structure would be the same size as the floor area of the fenced-in area.[2] It was further stated in the

1. Compare O'Boyle v. Coe, supra, 155 F. Supp. at 586, with Jarrott v. Scrivener, supra, 225 F.Supp. at 829.

2. Plans before the Board indicated that the dimensions of the outer walls of the proposed structure would be 16 feet 8 inches

by 12 feet 6 inches. No dimensions of the fenced-in area were presented to the Board. However, at the hearing before this Court, counsel represented that the dimensions of the fenced-in area were 15 feet 6 inches by 12 feet—thus making the outer dimensions of the proposed ·

affidavit that "[t]he proposed alteration will not increase the volume of business." This statement also stands uncontradicted in the record before the Board. As plaintiff's lawyer argued before the Board: "[The proposed structure] will in no way, shape or form extend a nonconforming use of this property as it exists now. It will not do it on a volume basis. This will not, it is very clear, increase the volume at the Hot Shoppe and will not on an area basis because this area is already used for storage." (Board Tr. 4, November 14, 1963.) There is thus no evidence suggesting that the proposed structure would constitute an "enlargement" of the nonconforming use—namely, the restaurant's curb service. All of the evidence is to the contrary. The Board therefore committed error in finding that the proposed structure was an enlargement; such finding is not supported by substantial evidence and is arbitrary and capricious.

 It is clear to this Court that the proposed structure is a "structural alteration," which under the Zoning Act, is permitted if it is "required by law or regulation." D.C.Code § 5–419, supra. A "structural alteration" is defined in the Zoning Regulations as: "any change in the permanent physical members of a *building* or other *structure*, such as bearing walls or partitions, columns, joists, rafters, beams, or girders." Zoning Regs. § 1202. (Emphasis in original.) The present enclosure is not a "building," because under the Regulations a building must have a roof. Zon-

ing Regs. § 1202. Counsel for defendants have stated, however, that the present fence is, under the Regulations, a "structure." (Tr. 65.[3]) And putting up four walls in place of two fenced sides and adding a roof is a "change in the permanent physical members" of the structure. Zoning Regs. § 1202 supra.

The remaining question is whether the proposed "structural alteration" is "required by law or regulation." D.C. Code § 5–419. It is conceded that the order of the Health Department has the effect of a law or regulation for purposes of this statute. The issue is whether the order directing plaintiff to keep its commissary carts under cover "requires" the proposed structural alteration, within the meaning of the statute. The affidavit of plaintiff's district manager submitted to the Board states: "There is not sufficient room in the existing building to store such commissary carts. * * * In order to comply with the Health Department's directive, it is necessary that the existing structure be altered in accordance with the plot and building plans submitted to this Board at its hearing of July 18, 1962." The only contradictory statement is a conclusory assertion in the "opinion" section of the Board's order where the Board declared: "Since it is obvious that the equipment can be placed somewhere inside the existing structure or perhaps other operational arrangements made, it is our conclusion that appellant has failed to sustain its burden of proof that a hardship within the meaning of the law does in fact exist."

structure 14 inches longer and 6 inches wider than the present structure. It was further represented that since the new walls would be thicker than the present fence, the usable floor area on the inside would be in fact *less* than exists in the present structure. Thus the uncontradicted affidavit presented to the Board that the floor area would remain the same has been bolstered by details given to this Court at its request, which, had they been presented to the Board, would have required the Board to find that the usable floor area of the new structure would actually be less than that existing in the present structure.

3. "*Structure:* anything constructed, including a *building*, the use of which requires permanent location on the ground, or anything attached to something having a permanent location on the ground and including, among other things, radio or television towers, reviewing stands, platforms, flag poles, tanks, bins, gas holders, chimneys, bridges, and retaining walls. The term *structure* shall not include mechanical equipment, but shall include the supports for such equipment." Zoning Regs. § 1202.

The record before the Board is completely devoid of any support for this assertion. The sole conceivable support for this conclusion is found in the preliminary statement that the Board found certain facts "[a]s the result of an inspection of the property by the Board, and from the records and the evidence adduced at the hearing * * *." But the Board set forth no facts which it found as a result of its stated inspection of the property; there is nothing except the bare conclusion, which appears not as a finding of fact, but rather as part of the Board's "opinion."

 Counsel for defendants argues that since the Board states that it made an inspection of the property, and since the Board further states that "it is obvious that the equipment can be placed somewhere inside the existing structure," the Board is entitled to the presumption that it has facts to support its conclusion. The Court does not agree. In interpreting § 8202.64 of the Zoning Regulations, which requires that the Board must enter in the minutes book "the full reasons for its decisions," the Court of Appeals recently held in clear terms:

"[W]e think the requirement of "full reasons" must be construed to mean that, in order to support its conclusions, the Board shall make basic findings of fact in terms of the [appropriate] regulatory criteria * * *. We do not mean, of course, to imply that the Board's findings must be set forth with such minute particularity as to amount to an exhaustive summation of all the evidence of record. We hold only that in a given case the Board must assume the responsibility of expressing the basic facts on which it relied with sufficient specificity to convey to the parties, as well as to the court, an adequate statement of the facts which persuaded the Board to arrive at its decision." Robey v. Schwab, 113 U.S.App.D.C. 241, 245, 307 F.2d 198, 202 (1962). (Footnotes omitted.)

The Court added to the above-quoted language a footnote in which it said that it was not inappropriate to recall the following observation of Judge Frank in United States v. Forness, 125 F.2d 928, 942 (2d Cir. 1942), cert. denied, City of Salamanca v. United States, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942): "Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper." Robey, supra, 113 U.S.App.D.C. at 245 n. 13, 307 F.2d at 202. Indeed, if the Board fails to express its basic facts on paper, there is no way by which this Court can carry out its responsibility to ascertain whether any of the findings of fact must be set aside as not supported by substantial evidence, as arbitrary or capricious, or as clearly erroneous.

 There is an even graver procedural defect than the Board's failure to set forth the facts upon which it relied in reaching its conclusion that the proposed structure was not required: this is that the inspection of the premises is nowhere set forth in the record except for the mere statement in the order that such inspection took place. Plaintiff did not know that such inspection had taken place, and had no opportunity to question or refute the results of such inspection. In following this procedure, the Board violated two of the requirements of the Zoning Regulations, and deprived plaintiff of due process of law. In the first place, § 8203.7 of the Regulations sets forth the order of procedure at a hearing: first the appellant or applicant states his side of the case; then any administrative officer states his side of the case; then any interested property owners or other interested persons state their side of the case; and finally appellant has a chance to make a rebuttal. The purpose of this last procedural requirement is to give an applicant the opportunity to rebut just such findings as may have been made as a result of the inspection of plaintiff's property. In the second place, the Secretary of the Board is required, under § 8202.63 of the

Regulations, to enter in the docket "all continuances, postponements, dates of sending notices, and *other steps taken or acts done by the Board* or its officers on behalf of the Board." Under this Regulation, "an inspection of the property by the Board" would constitute a "step taken" or an "act done," and would have to be entered in the docket. Exactly how much further due process would go in protecting plaintiff from the kind of arbitrariness demonstrated by the Board is not a question which this Court need resolve at the present time; suffice it to say that the bare minimum, as specified in the Regulations, is that he be permitted to question and rebut any evidence gathered at any such inspection, and that the inspection itself be made a matter of record. *Ex parte* procedures followed by this Board have been so recently the subject of judicial censure as to require no further comment, see Jarrott v. Scrivener, 225 F.Supp. 827 (D.D.C.1964), except to note the following words of Judge Morris on precisely the point at issue here:

> If there be facts within the expert knowledge of the members of the Board, or acquired by personal inspection of the premises, these should be revealed at the hearing so that opportunity may be afforded to meet them by evidence or argument. There is no room for arbitrary action or unjust discrimination in our form of government by any of its agencies. Hyman v. Coe, 102 F. Supp. 254, 257 (1952).

Both the Zoning Regulations and the Constitution require just such fair confrontation in an adversary situation.

The Board's order must therefore be vacated, for three reasons: First, because there is no substantial evidence to support the Board's finding that the proposed structure would be an "enlargement"; second, because the Board did not set forth the facts about space inside the restaurant which the Board discovered as a result of its inspection of the premises and which would be central to the issue of whether the proposed structure is "required"; and third, because plaintiff did not have the opportunity required both by the Zoning Regulations and the Constitution to refute any such facts before the Board reached its decision.

It remains to be decided whether this case should be remanded to the Board for further action, or whether the Court as a matter of law can determine that plaintiff has carried the burden of proof which the Zoning Regulations impose [4] and is entitled to erect the proposed structure. Generally, remand to the Board for further proceedings is appropriate, Robey v. Schwab, supra; Hyman v. Coe, supra, 102 F.Supp. at 257–258; but where an abuse of discretion is manifest and where it is clear that the applicant has carried its burden of proof, then remand to the Board with instructions to grant applicant's request is proper. Hyman v. Coe, 146 F.Supp. at 32.[5]

The Court has decided to vacate the Board's order and to remand the case to the Board for further proceedings consistent with this opinion. Such proceedings shall include any additional testimony or arguments, rebuttal or otherwise, which any party to these proceedings may wish to offer on the issue of whether there is no room inside the restaurant to store the commissary carts (thus making the proposed structural alteration "required" within the meaning of D.C.Code § 5–419), as well as a finding of fact on this same issue.

---

4. "In all cases before the Board the burden of proof shall rest with the appellant or applicant. If no evidence is presented in opposition to his case he shall not be relieved of this responsibility." § 8203.8, Zoning Regs.

5. Or if a remand for further proceedings is appropriate but the Board is so tainted by its prior decision as to be unable to provide a fair tribunal, then the court can order that an entirely new Board be constituted for the purpose of hearing the case. Jarrott v. Scrivener, supra, 225 F. Supp. at 836.

■■■■■■ One reason that the Court will follow this procedure is that the Board and, at least initially, the plaintiff as well, proceeded as if plaintiff were only seeking a variance under D.C.Code § 5-420(3) which vests in the Board broad discretion "to relieve * * * difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map." This provision is quoted in its entirety in § 8207.11 of the Zoning Regulations, which section was specifically invoked on a form which plaintiff filled out to make the appeal to the Board. Plaintiff further requested "a variance from [the] use provisions [of] the C-1 Zoning in order to erect a small utility building adjacent to our restaurant at this location, as required by the Health Department." However, plaintiff should have proceeded in the alternative, invoking not "hardship" but a clear statutory right to erect the proposed structure under D.C.Code § 5-420(1), which gives the Board the power:

"(1) To hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision, determination, or refusal made by the inspector of buildings or the Commissioners of the District of Columbia or any other administrative officer or body in the carrying out or enforcement of any regulation adopted pursuant to sections 5-413 to 5-428." D.C. Code § 5-420(1).

In the Zoning Regulations, subsection (1) above is set forth under the caption "Section 8206—Appellate Jurisdiction," while subsection (3) above, dealing with variances, Regs. § 8207.11, is set forth under the caption "Section 8207—Original Jurisdiction."[6] The practical distinction between the two is that there

6. Subsection (2) of D.C.Code § 5-420 is also set forth under "Original Jurisdiction" in the Regulations, § 8207.2 Zoning Regs. The relevant portions of § 5-420 follow, clearly setting forth the three alternative remedies:

"Appeals to the Board of Adjustment may be taken by any person aggrieved, or organization authorized to represent such person, or by any officer or department of the government of the District of Columbia or the federal government affected, by any decision of the inspector of buildings granting or refusing a building permit or granting or withholding a certificate of occupancy, or any other administrative decision based in whole or part upon any zoning regulation or map adopted under sections 5-413 to 5-428. * * * There shall be a public hearing on appeal. "Upon appeals the Board of Adjustment shall have the following powers:

"(1) [As set forth in full, in the text above.]

"(2) To hear and decide, in accordance with the provisions of the regulations adopted by the Zoning Commission, requests for *special exceptions* or map interpretations or for decisions upon other special questions upon which such board is required or authorized by the regulations to pass.

"(3) Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under sections 5-413 to 5-428 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a *variance* from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

"(4) In exercising the above-mentioned powers the Board of Adjustment may, in conformity with the provisions of sections 5-413 to 5-428 reverse or affirm, wholly or partly, or may modify the order, requirement, decision, determination, or refusal appealed from or may make such order as may be necessary to carry out its decision or authorization, and to that end shall have all the powers of the officer or body from whom the appeal is taken." D.C.Code § 5-420. (Emphases added.)

is greater discretion vested in the Board in granting or denying variances than there is in determining whether "error" has been committed by any official, particularly where, as here, the alleged error was one of statutory interpretation. Plaintiff's primary claim is that the inspector of buildings, to whom plaintiff was required to apply for a building permit, D.C.Code § 5–422, erroneously denied such permit as a matter of law. D.C.Code § 5–420 gives "any person aggrieved * * * by any decision of the inspector of buildings granting or refusing a building permit * * *" the right to take an appeal to the Board of Zoning Adjustment, which in turn has the power to hear and decide appeals where "error" is alleged; to hear and decide requests for special exceptions; and to authorize variances. It was the first of these subsections which plaintiff should have invoked, as well as the third.

Since it is required of this court that "[a]ll pleadings shall be so construed as to do substantial justice," Rule 8(f), Federal Rules of Civil Procedure, and since the Board construed the pleadings before it as involving a discretion which was only an alternative remedy which it need not have reached, this Court will instruct the Board in its further proceedings to consider plaintiff's request, first under its appellate jurisdiction to determine "errors," and only if it then becomes necessary, under its original jurisdiction to grant or deny variances.

 In determining the case as an appellate matter, the Board should be aware that the commissary carts which are the subject of the Health Department's order are used to further both the restaurant's conforming uses (table and counter service) and its nonconforming use (curb service); that the restaurant has the statutory right to continue its nonconforming use utilizing the same floor and land area as such nonconforming use presently occupies; and that any complaints on the part of neighbors to noise or other disturbances are wholly immaterial to the initial issue before the Board.[7]

 The Board is therefore instructed that if it finds as a fact that there is not room inside the restaurant to store the commissary carts, plaintiff is entitled to the building permit as a matter of law since the proposed structural alteration would thereby be "required" by the order of the Health Department within the meaning of D.C.Code § 5–419.[8] If, however, the Board finds that there is room inside the restaurant to store the commissary carts, the Board may then consider plaintiff's application as a request for a variance under subsection (3) of D.C.Code § 5–420, which would then require the Board to determine whether plaintiff has established any "difficulties or hardship" which would, consistently with the integrity of the zoning plan and the public good, support the issuance of a variance to permit the building of the proposed structural alteration.

The case will therefore be remanded to the Board of Zoning Adjustment, for

---

7. "The evidence as to the resulting inconveniences and noises incident to the use of the building and land upon which it is situated as it existed at the time of the adoption of the zoning ordinance, and since, is wholly immaterial, and sheds no light on the decisive issue. If this were an action to require the cessation of a prohibited business or a prosecution to abate a nuisance, such evidence would be material. The enforcement of the provisions of a zoning ordinance dealing with structural alterations may not be resorted to to accomplish the purpose of such an action or prosecution. There is no evidence showing, or tending to show, that the alteration of the plant, as proposed and requested by the application for the permit, will increase, or at all affect, or create, any additional noise, smoke, or other inconveniences." A. L. Carrithers & Son v. City of Louisville, 250 Ky. 462, 63 S.W.2d 493, 495 (1933).

8. The Board's conclusion in the "opinion" section of its order that "*perhaps* other operational arrangements [can] be made" (emphasis added) is so vague and hypothetical as not to amount to any conclusion upon which the Board could reasonably act or upon which the Board's action could be sustained by a court.

further proceedings consistent with this opinion.

This memorandum shall be considered as findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.