**CITIZENS ASSOCIATION OF GEORGE-TOWN, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent.**

**No. 5971.**

District of Columbia Court of Appeals.

Argued Jan. 10, 1972.

Decided March 22, 1972.

**668**

Christopher W. Keller, with whom Courts Oulahan, Washington, D. C., was on the brief, for petitioner.

E. Calvin Golumbic, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent. Ted D. Kuemmerling, Asst. Corp. Counsel, also entered an appearance for respondent.

Before HOOD, Chief Judge, and GALLAGHER and PAIR, Associate Judges.

GALLAGHER, Associate Judge.

The Citizens Association of Georgetown, Inc. (hereinafter petitioner), petitions for review under D.C.Code 1967, § 1–1510 (Supp. IV, 1971) of an order of the District of Columbia Alcoholic Beverage Control Board (hereafter Board), granting a Retailers Class C liquor license (D.C.Code 1967, § 25–111 (Supp. IV, 1971) ) to Sundown, Inc., t/a Chesapeake Inn, which proposes to operate a restaurant at 3040 M Street, N.W.

In reference to the denial of its pre-hearing motion for production of documents, petitioner complains it was thereby refused access to certain confidential reports in the Board's files made by the inspection staff relating to the moral character and fitness of the applicant for the license. Petitioner acknowledges it did not allege there is any such failing on the part of the applicant but says it could hardly do so without knowing what the Board's files contained. Finally, petitioner asserts there was no record support for the Board's finding with respect to fitness.

█ Under the Alcholic Beverage Control Act, the Board is required to *"satisfy itself*[1] . . . [t]hat the applicant . . . if a corporation, each of its principal officers and directors, is of good moral

---

1. It hardly needs saying that the term "satisfy itself" carries with it the requirement that such satisfaction results from substantial, probative evidence of record.

character and generally fit for the trust to be in him reposed." D.C.Code 1967, § 25–115(a) 1 (Supp. IV, 1971). (Emphasis supplied.) The Board has a public interest function to perform unlike that of a court in private civil litigation between two contesting parties where relevant and material allegations made by the plaintiff are taken as admitted if not contested. The Board made the finding here that the applicant (a corporation) met the moral fitness statutory requirement. But a review of the record discloses that no evidence was introduced upon which this finding could be based. During the hearing, the applicant did not address itself to this statutory standard.

■ It is true that petitioner admits its opposition to the license was based fundamentally upon its position that this area of the city (Georgetown) is already saturated with establishments having liquor licenses, with the attendant congestion, traffic and police problems flowing from this condition. Even so, having standing to contest issuance of a license as it does (Citizens Association of Georgetown v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175 (1968), cert. denied, 394 U.S. 975, 89 S.Ct. 1454, 22 L.Ed.2d 755 (1969) ), petitioner may properly contest the Board's actions in the matter of meeting its statutory obligations procedurally and substantively.

In announcing the Board's denial of petitioner's motion for production of documents, the Chairman stated:

Our investigator *routinely interviews* the principal officers of the Corporation and *makes a report to the Board*. I'm sure, as you're aware, the issue has been raised and it has been held that *those are confidential information reports* of the Board. I doubt that they are here because *they are supposed to remain in the confidential file*. (Emphasis supplied.)

It is reasonable to conclude from this statement that the Board has obtained, and routinely obtains, information by staff investigation which it considers in exercising its statutory function. It is also reasonable to expect that the Board members read these routine reports and, consequently, it can hardly be said the Board does not consider information in these reports. And if they consider such information we do not feel it can be said it may not have the impact of evidence. Yet this "confidential information" is not a matter of record in this proceeding and the public,[2] especially a protestant to the issuance of a license, is unaware of this information considered by the Board and has no opportunity to rebut it. It is not controlling here that the Board does not state in its findings that it placed reliance on such information.

■ Not only a Board finding of moral character and fitness, but any finding required by the statute (D.C.Code 1967, § 25–115 (Supp. IV, 1971)), must be based only upon evidence in the public record of the proceeding. Not only that, the participants in the proceeding must have an opportunity to address themselves to this evidence. Otherwise, the fundamentals of due process of law are denied. Furthermore, the District of Columbia Administrative Procedure Act (D.C.Code 1967, § 1–1501 (Supp. IV, 1971)), specifically provides that the record shall consist *exclusively* of the testimony and exhibits and all material facts officially noticed; and that no decision shall be issued "except upon consideration of such exclusive record" (§ 1–1509 (c)). It is "a fundamental principle of all adjudication, judicial and administrative alike, that the mind of the decider should not be swayed by materials which are not communicated to both parties and which they are not given an opportunity to controvert." Mazza v. Cavicchia, 15 N.J. 498, 516, 105 A.2d 545, 555 (1954); *see* Hot Shoppes, Inc. v. Clouser, 231 F.Supp. 825

2. As will appear later, we do not imply that the Board must make all such investigative information a matter of public record. The test is will the Board rely upon it in determining whether to issue a license.

(D.D.C.1964), aff'd, 120 U.S.App.D.C. 353, 346 F.2d 834 (1965). *See also* 1 F. Cooper, State Administrative Law 363–66 (1965).

■ Since the indication we must draw from the Chairman's statement is that the Board, or some of its members, obtained and considered, and may well have relied upon,[3] information from staff investigative reports not made a matter of record in the proceeding we must remand for further proceedings. We do not hold that petitioner has established here that it is entitled to production of the documents but, upon remand, all information in those reports which is relevant and material to the statutory criteria for the issuance or denial of the license and which will be relied upon in any degree by the Board must be entered into the record of the proceedings. *See* 1 F. Cooper, State Administrative Law, *supra* at 363. We leave it to the Board to fashion an accceptable procedure,[4] bearing in mind (a) the requirement that the participants must have the opportunity to rebut, and (b) the relative procedural informality of the administrative proceeding as contrasted with the technical rules of evidence in civil litigation.

Since we must remand, another issue raised by petitioner warrants comment. At the hearing, petitioner introduced evidence concerning the "surroundings"[5] of the premises, during the course of which the Board terminated a particular line of examination concerning parking signs and traffic lanes with the comment that the testimony was unnecessary as the Board members would go to the area and view the surroundings. After the hearing had ended the Board members, as stated in its findings and conclusions, "personally visited the premises, parking lots and vicinity." This is the only reference to the viewing, which so far as it appears from the record was done in the absence of counsel.

■ This is improper procedure. It is permissible for the Board to conduct an inspection of the area and premises but it should be done before a hearing terminates and counsel are entitled to be present at the viewing. Hubbard v. Freeman, D.C. App., 193 A.2d 734, 736 (1963); 4 Wigmore, Evidence § 1169 (3d ed. 1940).[6] "If there be facts . . . acquired by personal inspection . . . these should be revealed *at the hearing* so that opportunity may be afforded to meet them by evidence or argument." Hyman v. Coe, 102 F.Supp. 254, 257 (D.D.C.1952), *cited in* Hot Shoppes, Inc. v. Clouser, 231 F.Supp. 825 (D.D.C. 1964), aff'd 120 U.S.App.D.C. 353, 346 F.2d 834 (1965). (Emphasis added.) The knowledge gained from an inspection "cannot be made the basis, in whole or in part, for the award . . . unless there appears in the record the facts respecting the physical situation disclosed by the inspection." Giordano v. City Commission of Newark, 2 N.J. 585, 588–589, 67 A.2d 454, 455 (1949).

■ At the re-opened hearing, the Board should set forth the facts it considers to have been revealed as a result of the inspection. It should then give the applicant and petitioner the opportunity to address

---

3. For example, as we have stated, no evidence as such directed to the moral fitness criterion of the statute appears in this record. In this connection, the application for the license is not considered as substantial evidence in view of the statutory requirement.

4. While this remand proceeding need not await formal promulgation of a rule of procedure, the Board should proceed to adopt an appropriate rule without delay.

5. D.C.Code 1967, § 25–115(a) 6 (Supp. IV, 1971).

6. Wigmore, *supra*, there states that a judge in a nonjury case may where appropriate take a "view," "provided only that he observe the usual rule of fairness for a jury view, viz., that he notify the parties and allow them to attend him at the view." This rule would apply with equal force to any fact finder, administrative or judicial.

themselves to these facts by evidence or argument.[7]

■ As I read the concurring opinions, they relegate the duty of the Board to satisfy itself of the moral fitness of the applicant to a lesser importance in the proceeding than I think is required by law.[8] Because "[o]ne of the fundamental reasons for the enactment of liquor license laws is to restrict the liquor traffic to persons of *good moral character* who may reasonably be expected to keep their business free from the greater vices which have impelled restrictive legislation on the question." [9] (Emphasis supplied.) And "[u]nder statutory provisions that liquor licenses may be granted only to persons of good moral character or good reputation, an *applicant must satisfy the licensing authorities as to his fitness*." [10] (Emphasis supplied.) This would indicate an applicant has a burden, within reason, to demonstrate his fitness.[11]

The Board does not simply rely on the answers in an application relating to whether the applicant, or its principal officer, has been arrested or convicted, or has had an ABC license revoked but, instead, admittedly conducts a staff investigation of its own on this subject.[12] I do not view the concurring opinions as derogating this procedure. I think it is a worthwhile practice and should be continued as this assists the Board in carrying out its primary duty to protect the public interest. As I read the concurring opinions, however, we are all in agreement that in so doing the Board may not rely upon information not placed on the record in the proceeding.

I might say, further, that I think it would be unwise to create one exclusive formula for deciding moral fitness but, rather, because of the nature of this test it should be left in the first instance to the Board to decide on the facts of each case, bearing in mind that, for historical reasons, no factor is more important under the statute in determining whether to issue a license.

Petitioner's remaining contentions have been examined and found to be without substantial merit.[13]

Remanded for further proceedings.[14]

HOOD, Chief Judge (concurring).

Like Judge Pair, I agree in the result but solely on the basis that the Board in reaching its decision apparently relied in part on matters not of record.

With respect to the requirement that the Board must satisfy itself that the individual, whether he be the applicant or the principal officer of an applicant, be "of good moral character", it is my opinion that to be "of good moral character" means substantially nothing more than that the individual be a

---

7. As previously stated, in the future counsel should be given the opportunity to be present at any viewing.

8. We intend no implication that this particular applicant is affirmatively shown to lack the fitness for a license. Rather, there is a procedural deficiency sufficiently serious to warrant a remand.

9. 45 Am.Jur.2d Intoxicating Liquors § 149 (1969).

10. 48 C.J.S. Intoxicating Liquors § 135b (1947).

11. *Cf.* D.C.Code 1967, § 1–1509(b) (Supp. IV, 1971) where it is provided that a proponent of a rule or order has the burden of proof, except as otherwise provided by law.

12. *See* R. 292.

13. Assumedly, the statistics submitted by the police captain after the hearing terminated will be made a part of the record and petitioner will have the opportunity to comment upon them.

14. This action has the effect of vacating the license which the Board issued and if a license should be re-issued after further proceedings it would become effective as of the date of such re-issuance. We make this comment because at oral argument the parties showed concern that this appeal be decided before January 31, 1972, as all Class C licenses expire on that date. This decision removes any such problem, if it existed.

law-abiding citizen. And I believe that the Board can satisfy itself of this requirement, in the absence of evidence to the contrary, from the fact that the individual, a mature businessman, has never been arrested. I do not believe the individual must go through the formality of having a friend or friends testify that in his or their opinion the individual is of good moral character. Of course, if the Board has any doubt on the question, it may call for evidence to remove that doubt.[1] If the Board finds the individual to be a law-abiding citizen with a reasonable amount of business experience, I think the Board may find him to be "generally fit for the trust to be in him reposed." In short, I believe the Board must satisfy itself that the individual will not abuse or misuse, the privileges of the license if granted, and that a man's past record, as disclosed by his application, and his appearance before the Board, may furnish a sufficient basis for the Board's conclusion.[2]

I also disagree with the implied holding of Judge Gallagher that it is improper for the Board, without notice to the parties, to visit the premises and make a general inspection of the neighborhood in order to more fully understand and appreciate the testimony. If such general inspection should bring to light some specific fact not disclosed at the hearing, the parties should be informed of it and be permitted to rebut it or explain it away.

PAIR, Associate Judge (concurring).

I concur in the conclusion reached by Judge Gallagher in the majority opinion but solely for the reason that the Board, in deciding that a license should issue, may have officially noticed and relied upon reports not made a part of the administrative record.

I am, however, forced to disassociate myself from any participation in Judge Gallagher's holding that this court may overturn the Board's finding of moral fitness, even though there is no challenge to such finding and *no contrary evidence* respecting moral fitness appears of record. *See* Braniff Airways, Inc. v. C. A. B., 126 U.S.App.D.C. 399, 409, 379 F.2d 453, 463 (1967).

---

1. Refusal of the Board to issue a license or renew one on the ground of lack of moral character or fitness must be based on evidence which the applicant had the opportunity to rebut. Minkoff v. Payne, 93 U.S.App.D.C. 123, 210 F.2d 689 (1953).

2. The question of moral character or fitness is not the ordinary factual one, but is one requiring the exercise of judgment. Minkoff v. Payne, *supra* note 1.