### WESTERN AIR LINES, Inc. v. CIVIL AERONAUTICS BOARD.

No. 13245.

United States Court of Appeals Ninth Circuit.

May 19, 1952.

Guthrie, Darling & Shattuck, Los Angeles, Cal., for petitioner, Western Air Lines, Inc.

Reginald S. Laughlin, San Francisco, Cal., John T. Lorch, Floyd M. Rett, Henry L. Hill, Chicago, Ill. (Treadwell & Laughlin, San Francisco, Cal., and Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel), for amicus curiae United Air Lines, Inc.

G. Robert Henry, Las Vegas, Nev., for intervener, Bonanza Air Lines, Inc.

Winston C. Black, San Francisco, Cal., Wheeler & Scoutt, Washington, D.C., for amicus curiae, Mid-West Airlines, Inc., and Wisconsin Central Airlines, Inc.

H. G. Morison, Asst. Atty. Gen., J. Roger Wollenberg, Sp. Asst. to the Atty. Gen., John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, Oral D. Ozment, Atty., Civil Aeronautics Board, Emory T. Nunneley, Jr., Gen. Counsel, Civil Aeronautics Board, James L. Highsaw, Jr., Chief, Litigation and Research Division, Civil Aeronautics Board, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

DENMAN, Chief Judge.

This is a petition by Western Air Lines, Inc. to review an order of the Civil Aeronautics Board made on January 17, 1952, which ordered the following, inter alia:

1. The denial of Western's application for an extension from Yuma to Phoenix of its existing certificate of public convenience covering Los Angeles-San Diego-El Centro-Yuma.

2. A suspension for a limited time of Western's authority to serve El Centro and Yuma.

3. The denial of the application of Southwest Airways Co. for an extension of its route to cover Los Angeles-Phoenix via certain way points.

4. The granting to Bonanza Air Lines, an intervenor in this review proceeding, of a route extension to cover, inter alia, the cities at which Western was suspended. Immediately after the Board decision, the petitioner Western made a motion in this court under 49 U.S.C.A. § 646(d) to stay the effectiveness of the order and on February 18, 1952, this court entered its stay order, confining our consideration to the question of the power of the Board to make a limited suspension of Western's service to El Centro, California, and Yuma, Arizona.

The Board order here in question is a step in the determination of the difficult problem of certificating proper air service for the Southern California-Arizona local area which has been before the Board for over ten years in a proceeding called the California-Nevada Service Case. The history of this problem is set out in the Examiner's Report, appended to the order here in question, —— C.A.B. ——, at ——.

Suffice it to say for this decision that Western, a trunk line operating under a permanent certificate, had been given authority in 1943 to serve El Centro, California, and in 1946 to serve Yuma, Arizona. This authority was suspended by the order here in question until December 31, 1952, the date that the life of Bonanza Airlines, a temporarily certificated carrier, expires, or until the Board should finally determine a timely application by Bonanza for an extension of its temporary certificate. Concurrent with Western's suspension, at El Centro and Yuma, Bonanza was given authority to serve those cities under its temporary certificate.

Western attacks its suspension and divides its argument into three branches: (a) the order, rather than being a suspension, amounts to a revocation and does not meet the statutory requirements for revocation; (b) if the order is a suspension, it is invalid since the Board may not eliminate a permanently-certificated air carrier to make room for a new carrier; and (c) the suspension violates the Fifth Amendment since Western's property is taken for a public use without just compensation.

(a) 49 U.S.C.A. § 481(h) provides:

"The Board, upon petition or complaint or upon its own initiative, after notice and hearing, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require, or may revoke any such certificate, in whole or in part, for intentional failure to comply with any provision of this subchapter or any order, rule, or regulation issued hereunder or any term, condition, or limitation of such certificate: *Provided,* That no such certificate shall be revoked unless the holder thereof fails to comply, within a reasonable time to be fixed by the Board with an order of the Board commanding obedience to the provision, or to the order (other than an order issued in accordance with this proviso), rule, regulation, term, condition, or limitation found by the Board to have been violated * * *."

Western says that its suspension at El Centro and Yuma is permanent and thus in substance a revocation, because the history of feeder airlines like Bonanza shows that they are permanent. Consequently, the Board is not going to put Bonanza to its development costs at those places unless the Board intends to leave Bonanza there permanently and keep Western out of that segment of the air map permanently.

We are not convinced by Western's argument that the Board order is in substance a permanent revocation of Western's certificate. The order says in terms that the suspension will remain in effect until December 19, 1952, when Bonanza's temporary

certificate expires, or until action is taken on a petition by Bonanza for an extension of its temporary certificate. At that time, seven months hence, the situation confronting the Board in this Southern California-Arizona air route problem may be materially different from the one that faced the Board on January 17, 1952.

For example, the Board may then decide to deny any further extensions to Bonanza, even though this is improbable as Western points out. Or it may make a finding that the two cities cannot support air service at all, in which case Western concedes the power of suspension, or the Board may find that the cities will be better served as segments in a trunk line operation. There might also be a public necessity for two carriers, or Western itself may petition to suspend service to those cities, as indeed it did on March 16, 1949, on the ground that service to those points was not economical. Finally, the Board at that time may move to revoke Western's authority for a default, if there is such; or it may "alter, amend [or] modify" Western's certificate which it says it may do so long, as a basic transformation is not worked in the certificate of Western.

In the face of all these possibilities that will face the Board within a very short time, it is the merest speculation to say that the suspension order is in substance a permanent revocation. There will be more to sink our teeth into when we see what is done on December 19, 1952, or thereafter in relation to Bonanza's petition for extension.

■■ (b) The Board based its suspension of the trunk line, Western, on findings that the San Diego-El Centro-Yuma segments required local service and that Western was unwilling to operate a truly local service route there. In accordance with its long-established policy, the Board awarded the local service route, including the Yuma-Phoenix segment not previously served by Western, to a local service airline, Bonanza. Western says this kind of substitution of carriers under the Board's suspension power is invalid because the Board may only suspend when no air service at all is required. We do not so construe the Act. The Board may classify between types of air service and may find that one kind of air service is not appropriate during a certain time. To say that the Board could not substitute during that time another type of air service, required as a public necessity, would be an unreasonable limitation upon the Board's power to plot the air map, primarily in the public interest.

■ The statutory language, quoted supra, makes it appear that the only limitation on the Board's power to *suspend* is that the public convenience and necessity require suspension. The certificate granted to Western was also subject to power in the Board to "alter, amend [or] modify" it in the public convenience or necessity.

■ Although the issue here is the Board's power to suspend, one of the things we ought to consider in determining the power of suspension is the Board's power to alter Western's certificate at the end of this suspension period. In order to determine if an alteration were necessary, it is to the public's convenience in the Board's administration for it to know what facts would justify alteration. The Board says that this area requires local air service which Western has been unwilling to give; and we hold that the Board may test this hypothesis by suspending Western and testing other forms of service. Bonanza may use a different type of plane, or a new time schedule, or any of a number of other devices to develop air service in this area. This experience may give to the Board valuable information leading to a lifting of Western's suspension next December, with an alteration, amendment or modification of Western's certificate, necessary to serve the public convenience.

(c) Western claims that the issue of deprivation of property without due process was raised before the Board in the following terms:

"At this point the Board is wielding a heavy club but still recognizes * * * the Constitution of the United States."

■ This vague reference to the Constitution is totally inadequate to put the due process issue in the case before the Board; and the Board quite properly did not rule

on the point. Since Western did not make its case on this issue before the Board, it is expressly barred now from raising the issue in this court. 49 U.S.C.A. § 646(e). Western says its failure to raise the issue is based on the reasonable ground that a petition for rehearing raising that question would have further delayed these proceedings; but this does not explain its failure to raise the issue in the hearing before the January 17 order; and it was on notice that it might be suspended since the Board had issued its show cause order to that effect on December 19, 1949.

The order of the Board is affirmed.

STEPHENS, Circuit Judge (concurring).

I concur in the result. I am, though, impressed with the showing made that the Board's orders impose an undue burden on Western. However, unless the orders of administrative boards and agencies are clearly illegal courts must not interfere with them. I am not convinced that the changes ordered are so unreasonable as to amount to lack of due process or that the orders are otherwise legally bad.