281 F.2d 18
 NORTH CENTRAL AIRLINES, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent,
State of Wisconsin, City of Marshfield, Wisconsin, City of Ashland, Wisconsin, Ozark Air Lines, Inc., Intervenors.
 No. 14947.
 United States Court of Appeals District of Columbia Circuit.
 Argued November 23, 1959.
 Decided May 12, 1960.
 
 Mr. Emory N. Ellis, Jr., Washington, D. C., with whom Mr. A. L. Wheeler, Washington, D. C., was on the brief, for petitioner.
 Mr. Morris Chertkov, Atty., Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, John H. Wanner, Deputy Gen. Counsel, and O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Board, and Richard A. Solomon, Atty., Dept. of Justice, were on the brief, for respondent.
 Mr. John H. Bowers, of the Bar of the Supreme Court of Wisconsin, Madison, Wis., pro hac vice, by special leave of the Court, with whom Mr. William E. Torkelson, Madison, Wis., was on the brief, for intervenor, State of Wisconsin. Mr. John J. Schlick, Washington, D. C., also entered an appearance for intervenor State of Wisconsin.
 Messrs. Ellsworth C. Alvord, John H. Doyle, and John J. Schlick, Washington, D. C., were on the brief for intervenors City of Ashland, Wis., and City of Marshfield, Wis.
 Mr. L. Alton Denslow, Washington, D. C., was on the brief of intervenor Ozark Air Lines, Inc.
 Before Mr. Justice REED, retired,* and FAHY, and DANAHER, Circuit Judges.
 Mr. Justice REED, sitting by designation.
 
 
 1
 The Civil Aeronautics Board issued Board Order E-13254, December 8, 1958, in its Seven States Area Investigation. On April 24, 1959, the Board's Order E-13787 denied petitioner's request for reconsideration and this appeal followed. No question as to the right of review arises.[1]
 
 
 2
 The Seven States Area Investigation, covering North and South Dakota, Minnesota, Iowa, Nebraska, Wisconsin and Illinois, followed various applications of different companies for routes or segments of routes in the seven states area described above. Interested states and localities were also parties. The applications of the North Central Airlines involved in this appeal, together with those of numerous other companies, were consolidated so that the CAB would have an "opportunity to review the local air service pattern in the area covered by the states involved and develop a sound pattern of service to meet the needs of the entire area."[2]
 
 
 3
 One of the routes included was No. 86, previously certified for local or feeder service by the CAB to North Central. As a result of the investigation an amended certificate for Route 86 was issued to North Central February 13, 1959. The amendment directed service by Route 86 to four new cities — Ashland, Wisconsin; Rockford, Illinois; and Marshfield and Appleton, Wisconsin. Two of these cities are between the termini of existing segments[3] and call for minor diversions from the geographical lines theretofore being flown by petitioner. A new segment between the Twin Cities and Milwaukee was authorized to serve Marshfield and Appleton. That segment serves Eau Claire, Wisconsin, which also was served by planes on segment five between Chicago and the Twin Cities. This new segment is in the heart of other segments of North Central's Route 86 serving the area between Chicago and Milwaukee on the East and the Twin Cities on the West.[4] The additional miles of flight required by the amendment to the certificate are minor.
 
 
 4
 These services to the four cities were required by the CAB under the authority of 49 U.S.C.A. § 481(h) of the Civil Aeronautics Act of 1938, reading as follows:
 
 
 5
 "(h) The Board, upon petition or complaint or upon its own initiative, after notice and hearing, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require, or may revoke any such certificate, in whole or in part, for intentional failure to comply with any provision of this subchapter or any order, rule, or regulation issued hereunder or any term, condition, or limitation of such certificate: * * *"
 
 
 6
 The Federal Aviation Act of 1958 enacted during this litigation became a law August 23, 1958, 72 Stat. 731. There was no change that affects this appeal. See § 401(g). 49 U.S.C.A. § 1371(g) (1958).
 
 
 7
 Petitioner's first objection is that it could not be properly said that it was "willing" to serve these cities within the meaning of the Civil Aeronautics Act of 1938, which reads as follows:
 
 
 8
 "The Board shall issue a certificate authorizing the whole or any part of the transportation covered by the application, if it finds that the applicant is fit, willing, and able to perform such transportation properly, and to conform to the provisions of this chapter and the rules, regulations, and requirements of the Board hereunder, and that such transportation is required by the public convenience and necessity; otherwise such application shall be denied."[5]
 
 
 9
 Petitioner's contention is that under these two quoted provisions of the acts an extension of services cannot be made unless the holder of the certificate is "willing" to serve the new points. This position petitioner asserts follows from the fact that neither the word "extend" nor any language carrying that connotation appears in the above section (h) of the Civil Aeronautics Act of 1938 or the Federal Aviation Act of 1958. It is argued that this power was omitted deliberately in both CAB acts, because prior acts requiring certificates of convenience and necessity for public operation had contained authority omitted here to extend services. Transportation Act of 1920, 41 Stat. 478, § 402(21);[6] Communications Act of 1934, 47 U.S.C.A. § 214(d); Federal Power Act of 1920, 16 U.S.C.A. § 824f; Motor Carrier Act of 1935, 49 U.S.C.A. § 308(a).
 
 
 10
 There are, of course, difficulties in determining just how far an administrative agency can require changes in services of commercial aviation lines, without the line's consent, beyond the routes or cities originally applied for by and certificated to the operator. If the extension requirements called for service outside the prior areas, "willingness" might well be necessary as in an application under § 481(d) (1), supra. We have concluded, however, that we need not face that problem in this case. It has been before the CAB over the years and the Board has consistently followed its rule laid down in Panagra Terminal Investigation (1944), 4 C.A.B. 670. Referring to § 401(h), supra, of the Civil Aeronautics Act, the Board said:
 
 
 11
 "We are of the opinion that this section of the Act does authorize the Board to add new points or services to the certificate of a carrier on the Board's own initiative and without an application by, and the consent of, the carrier; but this authority does not include the addition of new service which would be so extensive as to amount to a new air transportation route, or of such a kind as to substantially change the character of a carrier's system." P. 673.[7]
 
 
 12
 We do not need to consider whether the change in route here required an expression of willingness because we conclude that there was an expression and finding of willingness by petitioner to accept the CAB changes in its routes.
 
 
 13
 On July 16, 1954, North Central sought from the CAB a permanent certificate of public convenience and necessity for its route 86 whose various segments passed near the four cities in question. After listing the various terminal points of its flights, the application added "4. The applicant requests authority to serve any other city or cities in any manner whatsoever in any route pattern which the Board considers in the public interest". This was used by the Board to support the right of Central to consideration for an Omaha-Denver route.[8] The Board had previously held over a competitor's objection in the Southeastern States case, 8 C.A.B. 716, 719, that similar language justified an award of a certificate of convenience and necessity where the award differed markedly from the application.[9]
 
 
 14
 On January 24, 1956, North Central requested a consolidation of its applications into the present Seven States Area Case and repeated its willingness to serve "any city on any route or any combination of routes which the Board considers serves the public convenience and necessity." Again, when during the hearing a question arose as to the willingness of North Central to serve cities in Wisconsin which it had not applied for, it answered through its counsel, "Yes, we would be willing to serve those cities, and I have advised Mr. Bowers that we would serve them if the Board certificated it." Again, when objecting to the examiner's report, North Central argued thus:
 
 
 15
 "North Central is willing and anxious to serve the routes recommended by the Trial Examiner. However, the Board must realize that every route recommended to North Central is a marginal public service route. North Central's total subsidy per route mile will undoubtedly reflect an appreciable increase if the awards recommended are granted in this proceeding. North Central believes that the Board should certificate North Central for some economically desirable routes to offset the increase in subsidy resulting from the operation of the recommended routes."
 
 
 16
 An economic argument in the brief, as distinguished from a refusal to serve, against the Examiner's inclusion of Marshfield, Appleton, and Ashland had preceded this statement but that argument did not assert "unwillingness." It seems correct to say, as respondent does:
 
 
 17
 "Petitioner's unequivocal statement of its unwillingness to serve and the contention that the Board lacks power to amend in such circumstances first came in its petition for reconsideration of the Board's final decision."
 
 
 18
 This final decision was December 8, 1958.[10] It ordered that certificates be issued to North Central covering the cities in question, and found:
 
 
 19
 "1. That Frontier, North Central and Ozark are each citizens of the United States within the meaning of the Act and are fit, willing and able properly to perform the transportation hereinabove authorized to be performed by each of them and to conform to the provisions of the Act and the Board's rules, regulations and requirements thereunder." An accompanying order directed the issuance of the certificates.
 
 
 20
 "It is ordered:
 
 
 21
 "1. That amended certificates of public convenience and necessity in the forms attached hereto be issued to Frontier Airlines, Inc., for route No. 73; to North Central Airlines, Inc., for route No. 86; and to Ozark Airlines, Inc., for route No. 107;"
 
 
 22
 The opinion, the finding and the order for the issuance of the amended certificates terminated the Seven States Hearing, just as a judgment would terminate a civil proceeding. Of course, either a judicial or an administrative hearing may be reopened for proper cause.[11] But there are no such grounds here. After the CAB has made its findings on a record, the fact that the result is unsatisfactory to a party before it cannot justify a rehearing. The petitioner knew the cities it now does not wish to serve were under consideration both by the Examiner and the Board. It knew it had expressed a willingness to serve in accordance with the Board's conclusions in the hearings. At the stage when petitioner sought relief from serving the cities in question, it was too late.
 
 
 23
 North Central argues too that there was not a fair hearing and questions the sufficiency of the Board's findings.
 
 
 24
 Fair Hearing. North Central claims that it was deprived of a fair hearing in that certain members of the CAB's Bureau of Air Operations were present at meetings of the Board at which the case was considered. The Bureau was a party to this proceeding representing the public interest and as such argued in the adversary proceedings before the Board. While petitioner mentions several members of the Bureau staff in its brief to this Court, only the Chief of the Bureau was mentioned in North Central's petition for reconsideration before the CAB. Objections to other persons are barred by 49 U.S.C.A. § 1486(e). The contentions as to the Chief of the Bureau were rejected by the Board on the basis of minutes of the meeting. These minutes were before the Board and constitute substantial evidence foreclosing redetermination of the facts by the Court. In its reply brief, petitioner cites and quotes from its petition for reconsideration to show that the scope of the objection before the Board was not limited to the presence of the Chief of the Bureau. This reading of the cited passage does not comport with its connotation in context, which was clearly limited to the presence of the Bureau Chief.
 
 
 25
 Sufficiency of Board's findings. The Board's opinion in this proceeding was thorough and careful. Petitioner attacks a number of the findings as inconsistent and insufficient. North Central repeatedly takes one of several factors relied upon by the Board in reaching a particular decision and, after showing that the same factor was not considered determinative in another context, asserts that the findings are therefore inconsistent. The record seems both sufficient and consistent to us and ample to support the conclusions of the Board in its allocation of routes and segments of routes objected to by North Central in this proceeding.
 
 
 26
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.C
 
 
 [1]
 See Civil Aeronautics Act of 1938, 49 U.S.C.A. § 646, and Federal Aviation Act of 1958, 49 U.S.C.A. § 1486
 
 
 [2]
 Order of Consolidation No. E-10,100, Docket No. 7454
 
 
 [3]
 The word "segment" is used in aviation to describe portions of routes between terminal points of flight. A route may be an aggregation of segments
 
 
 [4]
 The CAB said in its opinion accompanying the December 8th order, note 122:
 "We anticipate that in operating the new route between the Twin Cities and Milwaukee via Eau Claire, Marshfield and Appleton, the carrier will be able to divert flights presently operating between the Twin Cities and Milwaukee via Eau Claire. On this basis we anticipate that the new service being authorized would not require any subsidy."
 
 
 [5]
 49 U.S.C.A. § 481(d) (1). Sec. 401(d) (1) of the Federal Aviation Act of 1958, 72 Stat. 731, has the same language
 
 
 [6]
 Cf. Interstate Commerce Commission v. Oregon-Washington R. & Nav. Co., 288 U.S. 14, 34, 53 S.Ct. 266, 272, 77 L.Ed. 588. The Court interpreted "extend its line or lines" to be "confined to extensions within the undertaking of the carrier to serve, and cannot be extended to embrace the building of what is essentially a new line to reach new territory." 288 U.S. at page 40, 53 S.Ct. at page 274
 "This line, 185 miles in length, after leaving Crane would traverse about 20 miles of swampy area and 15 miles of alkali flats, and would then pass over the Great Sandy or High Desert for 115 miles." Id., 288 U.S. at page 30, 53 S.Ct. at page 270.
 
 
 [7]
 Caribbean Area, 9 C.A.B. 534, 546-547; Alaska Route Modification, 17 C.A.B. 943, 945, 946; Intra-Alaska Case, Order No. E-13,376, decided September 23, 1958. Cf. United Air Lines v. Civil Aeronautics Board, 7 Cir., 198 F.2d 100, 105, 106; Western Air Lines v. Civil Aeronautics Board, 9 Cir., 196 F.2d 933
 
 
 [8]
 "[G]eneral or `catchall' clause in Central's application requesting consideration as an applicant for any new routes found required and filing of formal notice by carrier invoking `catchall' clause to cover a Lincoln-Denver extension constituted sufficient basis for consideration of Central as applicant for Omaha-Denver route within standards applied in South-eastern States Case, 8 C.A.B. 716 (1947)."
 
 
 [9]
 8 C.A.B., at 719: "State argues that in awarding Piedmont a route differing on a point-to-point basis from that specifically applied for, the Board granted what was neither the `whole or any part of the transportation covered by the application.' It is unnecessary here to determine the limits which the quoted portion of section 401(d) places upon the Board's powers, for we conclude that Piedmont's request was sufficiently broad in scope to embrace the route awarded it
 "Piedmont orginally filed an application on June 2, 1944, proposing scheduled air transportation of persons, property, and mail in a combination passenger-property pick-up service over routes covering North Carolina, Ohio, Virginia, West Virginia, Kentucky, Tennessee, Georgia, South Carolina, and the District of Columbia. The application sought authority for nine routes specifically described `or such modification of such routes as the Board may find the public convenience requires.'"
 
 
 [10]
 The petition for reconsideration says:
 "Section 401(d) of the Civil Aeronautics Act requires that an applicant be fit, willing and able to perform the service it applies for. The Board has recognized that additions of new mileages, although in form they may be `amendments' under Section 401(h), are, in essence, exercises of the general certificating power conferred in Section 401(d) and that for this reason the requirements of showing a fitness, willingness, and ability is applicable to 401(h) proceedings. Pennsylvania-Central Airlines Corporation — Certificate of Public Convenience and Necessity, 2 CAB 275, 285 (1940); Pan-American Grace Certificate of Public Convenience and Necessity, 2 CAB 301, 314 (1940). North Central has stated that it is unwilling to serve Ashland and Marshfield. It is unwilling to serve Appleton and Rockford on the routes which the Board has certificated them to North Central. Therefore, there cannot be any finding of `fitness, willingness and ability' here."
 
 
 [11]
 49 U.S.C.A. § 1324(a); 49 U.S.C.A. § 1485. Cf. Federal Rules of Civil Procedure 59 and 60, 28 U.S.C.A.; 2 Davis, Administrative Law § 18.09 (1958)