**BRANIFF AIRWAYS, INCORPORATED,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Eastern Air Lines, Inc., Intervenor.

No. 20160.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 5, 1966.

Decided April 12, 1967.

Mr. B. Howell Hill, Washington, D. C., with whom Mr. Alexander E. Bennett, Washington, D. C., was on the brief, for petitioner. Messrs. Paul Porter and Daniel A. Rezneck, Washington, D. C., also entered appearances for petitioner.

Mr. Warren L. Sharfman, Associate Gen. Counsel, Litigation and Legislation, C. A. B., with whom Asst. Atty. Gen. Donald F. Turner, Messrs. Joseph B. Goldman, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Burton S. Kolko, Atty., C. A. B., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondent.

Mr. Harold L. Russell, Atlanta, Ga., with whom Messrs. E. Smythe Gambrell, Atlanta, Ga., and George C. Neal, Washington, D. C., were on the brief, for intervenor.

Before DANAHER, MCGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Nine years ago the Civil Aeronautics Board, respondent here, began extensive proceedings to determine new and improved air routes across the southern tier of states and to select the air carriers to serve these routes. Several carriers proposed regional service between principal cities in Texas and points in Florida. The Examiner recommended that this route be assigned to petitioner, Braniff Airways. The Board, after eliminating from ultimate consideration all carriers but Braniff and Eastern Air Lines, intervenor here, designated Eastern to operate the Dallas/Fort Worth to Miami run. In 1962, on petition to review, this court held that the Board had not made findings adequate to permit judicial review, and remanded the case for further proceedings, permitting the Board if it deemed it desirable to reopen the orders. To avoid the disruption of service already instituted we authorized the Board to permit existing service and route arrangements to remain in effect pending further proceedings. Braniff Airways, Inc. v. CAB, 113 U.S.App.D.C. 132, 306 F.2d 739 (1962). Eastern has continued to service this route.

The Board reopened the proceedings and set the applications for a comparative evidentiary hearing limited to the single question of whether Braniff or Eastern should get the nod, with the determination to be made solely on the basis of the new record. Again, the Examiner's decision favored Braniff, and again the Board awarded the route to Eastern, Order E–22252, June 1, 1965, Reopened Southern Transcontinental Service Case, 2 CCH Av.L.Rep. ¶ 21563 (1965). Only three members of the Board, Chairman Boyd and Members Minetti and Gillilland, participated in the decision, and they were in agreement. Vice-Chairman Robert Murphy and Member Adams did not take part in the decision.

Braniff moved for reconsideration on a number of grounds, challenging both the substance of the award and the procedures used in adopting and issuing it. In the interim, Chairman Boyd had left the Board and Chairman Charles Murphy, newly appointed to the Board, succeeded him. Members Minetti and Gillilland, who had voted for the decision in Eastern's favor, now voted to deny reconsideration. Chairman Charles Murphy and Vice-Chairman Robert Murphy, who had not previously participated, voted to grant reconsideration and award the route to Braniff. Member Adams did not participate. The participating members being equally divided, an order was entered denying the petition for reconsideration, Order E–23330, March 7, 1966. Braniff petitioned this court to review the orders. Eastern intervened to defend its certification.

A. The Board's Motion to Remand Without Consideration.

On February 10, 1967, while the case was before this court upon briefs and arguments, the Board determined to investigate the need for new authorizations for southern transcontinental service, including the route between Miami and California via Dallas/Fort Worth. The Board instructed its staff to petition this court to vacate, without disposition of the merits, Orders E–22252 and E–23330, and to remand for consideration by the Board in relation to the new investigation, so that the Board will have maximum flexibility in determining a new route pattern in the interest of public convenience and necessity. Vice-Chairman Murphy did not vote, and Member Adams did not participate as to the request for remand.

Eastern resists the motion to vacate and remand duly filed by counsel for the Board. It states that under the peculiar provisions of the governing statute,[1] the certificate was effective from the date specified and may not be modified or revoked, except after notice and hearing. Invoking Civil Aeronautics Board v. Delta Air Lines, Inc., 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961), Eastern says

---

1. Section 401 of the Federal Aviation Act of 1958, 49 U.S.C. §§ 1371(f), (g) (1964).

that, while a certificate may be vacated by judicial determination of CAB errors, Eastern's right to "security of route" protects it against summary cancellation by the Board.

The Board does not suggest that this court is without jurisdiction to consider the appeal, but rather that the public interest would be promoted by remand to the Board to consider the proceeding in the light of existing circumstances. For reasons discussed below, we had already decided prior to the Board's filing of its petition to remand the proceeding, although our opinion had not yet issued. In the circumstances we think the public interest would be served by pursuing that course, without stopping to consider whether and to what extent the *Delta* principle applies to a certificate award still under judicial review, and what kind of showing, if any is possible, would be requisite to justify remand of an order that the court concluded was without legal blemish. We shall in effect dispose of the case as presented, though without stopping to discuss all the matters initially before us, and dismiss the Board's petition to vacate as moot.

B. *The Procedural Objections to the Board's June 1, 1965, Order Certifying Eastern.*

 1. Braniff argues that the June 1, 1965, order is invalid because no quorum of the Board was available on critical dates.

The award on its face indicated that it was concurred in and signed on June 1, 1965, by Chairman Boyd (as well as Members Minetti and Gillilland). Braniff argues that by June 1, 1965, Mr. Boyd was no longer a member of the Civil Aeronautics Board since on that day he was sworn in as Under Secretary of Commerce.

The payroll records of the agencies show that Mr. Boyd was carried on the payroll of the Board only through May 31, 1965, and on the payroll of the Department of Commerce as of June 1, 1965. But these records explicitly declare that they are to be used for payroll purposes only. These bookkeeping computations do not control substantive questions of official authority.

Mr. Boyd did not formally resign. After presiding over the Board's conference on the morning of June 1, he made the short journey to the White House to be sworn in to his new office. We are convinced that he was still a qualified member of the Board when its deliberative process was completed on this case.

 2. Braniff then says that although the award was dated and entered on June 1, it was not served until June 2, and that under the Board's own decisions, *e. g.*, New York-Florida Case, 24 C.A.B. 94, 229 (1956), a "proposed decision of the Board does not become effective until an opinion and order containing detailed findings of fact and conclusions of law has been approved, issued, *and served* * * *. Until such time, each Member has retained full power to revise or reverse his vote and his findings on any of the matters under consideration." (Emphasis added.) We must read that passage in context. It was an attempt by the Board to justify its practice of issuing press releases announcing a result tentatively arrived at long in advance of the issuance of an opinion and order. In our view it is plain that once all members have voted for an award and caused it to be issued the order is not nullified because of incapacity, intervening before the ministerial act of service, of a member needed for a quorum. The Board's rulings on the other orders entered June 1 and served at a later date indicate that the Board considers the crucial time for testing the validity of an order to be the time when it is adopted and entered, and not when it comes into the hands of the parties.[2] This approach seems entirely reasonable.

---

2. Even those members who thought reconsideration should have been granted, and the route assigned to Braniff, did not do so on this ground. In considering the Salisbury-Wilmington "Use It or Lose It" Case, Order E-22253, June 1,

3. Next, Braniff challenges the Board's use of its "notation" procedure. Under the notation practice the views and votes of the members of a regulatory agency may be recorded separately rather than in joint session, and circulated to the remaining members for their attention.

■ Under Section 201(c) of the Federal Aviation Act of 1958, 49 U.S.C. § 1321(c) (1964), "[t]hree of the members shall constitute a quorum of the Board." Valid agency action depends on the effective concurrence of a majority of the designated quorum, WIBC, Inc. v. FCC, 104 U.S.App.D.C. 126, 128, 259 F. 2d 941, 943, cert. denied, Crosley Broadcasting Corp. v. WIBC, Inc., 358 U.S. 920, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958). But the quorum acting on a matter need not be physically present together at any particular time to ponder the evidence, Sisto v. CAB, 86 U.S.App.D.C. 31, 38, 179 F.2d 47, 54 (1949). Section 1001 of the Act authorizes the Board to "conduct [its] proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice." 49 U.S.C. § 1481 (1964). This permits the Board to proceed with its members acting separately, in their various offices, rather than jointly in conference. This is a reasonable way for the Board to proceed in dealing with its not inconsiderable work load. A similar system is in use on this court for processing motions and the deluge of petitions for rehearing en banc.

The Interstate Commerce Commission's use of notation voting procedure has been held valid under an identical statutory provision, Section 17(3) of the Interstate Commerce Act, 49 U.S.C. § 17 (3) (1964). See T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp.

777, 784–786 (S.D.Texas, 1960), aff'd *per curiam sub nom.* Herrin Transp. Co. v. United States, 366 U.S. 419, 81 S. Ct. 1356, 6 L.Ed.2d 387 (1961). See also Eastland Co. v. FCC, 67 App.D.C. 316, 319, 92 F.2d 467, 470, cert. denied, 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. 568 (1937), construing the equivalent section of the Communications Act, Section 4 (j), 47 U.S.C. § 154(j) (1964).

Braniff argues that the notation procedure, while not invalid per se, was improper here because our previous remand to make adequate findings made this case "peculiarly appropriate for discussion among Board members" and "there was evidently no meeting to discuss the findings." (Brief for Petitioner at 26).

■ It is "not the function of the court to probe the mental processes" of administrative officers, Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 999, 82 L.Ed. 1129 (1938). A strong presumption of regularity supports the inference that when administrative officials purport to decide weighty issues within their domain they have conscientiously considered the issues and adverted to the views of their colleagues. See generally Willapoint Oysters, Inc. v. Ewing, 174 F.2d 676, 696 (9th Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949); T.S.C. Motor Freight Lines, Inc. v. United States, *supra*, 186 F.Supp. at 790. Agencies are no more bound to enter for the record the time, place, and content of their deliberations than are courts.

4. It appears that Chairman Boyd actually signed the award on May 28, 1965, not June 1. So stated Members Minetti and Gillilland on denial of reconsideration. After the petition for review was filed, Braniff learned that Chairman

1965, 2 CCH Av.L.Rep. ¶ 21562 (1965), the Board rejected the argument that Chairman Boyd was not a member on June 1, held that he continued in office until he took his new oath that afternoon, and dismissed the petition for reconsideration. (Order E–22472, July 23, 1965). That order was affirmed by this

court. New Castle County Airport Comm. v. CAB, 125 U.S.App.D.C. 268, 371 F.2d 733 (1966). We avoided passing on this issue, on the basis of representations it was not properly before us but would be ripe for our attention in the instant case.

Boyd had not been in Washington on May 28. Braniff sought clarification and the Board filed in this court an affidavit of its Associate General Counsel that stated in pertinent part:

> I looked into the questions that were raised by the [Braniff] letter. I learned that Chairman Boyd was in Florida on May 28, attending a testimonial dinner, that a copy of the final draft of the Board's opinion and order which became Order No. E–22252 was taken to him, that Chairman Boyd subsequently directed his Assistant to affix Chairman Boyd's signature to the signature copy of Order No. E–22252 in accordance with normal practice, and that Chairman Boyd's Assistant carried out that instruction. Finally, I was told that if the circumstances required it, Mr. Boyd and his Assistant would supply affidavits covering these circumstances.

There were reasonable circumstances justifying presentation of this issue to the court, although it had not been urged before the Board,[3] but we find no prejudicial error requiring reversal on this gound.

We agree with Professor Davis, 2 ADMINISTRATIVE LAW § 11.07 at 66 (1958), that "despite its immediately appealing quality, the broad ideal that agency heads should do personally what they purport to do is for many functions impractical and unworkable * * *." The use of assistants in the administrative process is indispensable to the orderly and efficient expedition of great volumes of work and the reconciliation of divergent responsibilities. The courts have consistently approved an administrator's utilization of a staff member he deemed qualified in the performance of his official functions. It is well settled that even in the adjudicatory process, an administrative officer may rely on subordinates to sift and analyze the record and prepare summaries and confidential recommendations, and the officer may base his decision on these reports without reading the full transcript. See, e. g., Morgan v. United States, 298 U.S. 468, 481–482, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); Norris & Hirshberg, Inc. v. SEC, 82 U.S.App.D.C. 32, 36, 163 F.2d 689, 693 (1947), cert. denied, 333 U.S. 867, 68 S.Ct. 788, 92 L.Ed. 1145 1948); Willapoint Oysters, Inc. v. Ewing, *supra*, 174 F.2d at 696. The only requirement is that the decision in the ultimate must be that of the administrative officer, for he "bears full legal and personal accountability for that which bears his name or concurrence." T.S.C. Motor Freight Lines, Inc. v. United States, *supra*, 186 F.Supp. at 790.

While such procedure should be used sparingly, and only when prompted by some administrative necessity, we think a member of a regulatory agency who has considered the issues in a matter may direct an assistant to record his concurrence in a proposed disposition of them.[4]

The minutes of the June 1 meeting recite that Chairman Boyd presided.[5]

---

3. See Section 1006(e) of the Federal Aviation Act of 1958, 49 U.S.C. § 1486(e) (1964). The Administrative Procedure Act provides that in reviewing agency action "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. (This is the numbering in the recodification wrought by Pub.L. 89–554, 80 Stat. 378 (1966).

4. The Second Circuit has accepted an even greater delegation of responsibility by Board members to their subordinates. In Eastern Air Lines, Inc. v. CAB, 271 F.2d 752, 758 (1959), cert. denied, Capital Airways, Inc. v. CAB, 362 U.S. 970, 80 S.Ct. 954, 4 L.Ed.2d 901 (1960), that court found no error where the assistants to two Board members participated in meetings in place of their superiors and actually cast votes on tentative awards. The court there pointed out that the votes "cast by the assistants were cast in compliance with instructions given by their superiors."

5. This minute implicitly affirms Chairman Boyd's belief that he was still authorized to function as a member of the Board. This court has previously relied on the minutes of Board meetings to show that

Although this case was not formally raised at the meeting, we think this circumstance, coupled with the unquestioned fact that the other four members of the Board (two as not participating) on that day signed the opinion which on its face contained the concurrence of Chairman Boyd, supports the inference that the authorized signature of the Chairman was affixed to the opinion while he was still competent to vote.[6]

We do not intend that the attention we have paid to these arguments be interpreted as giving disappointed litigants a license to rummage through the internal processes of an administrative agency, searching for some irregularity, or the hint of one, on which to base a challenge to the validity of the decision. In a few highly unusual cases it may be appropriate to examine the procedures followed in making an institutional decision, see United Savings Bank v. Saxon, 209 F.Supp. 319 (D.D.C. 1962). The general rule remains that a party is not entitled to probe the deliberations of administrative officials, oversee their relationships with their assistants, or screen the internal documents and communications they utilize. "Just as a judge cannot be subjected to such a scrutiny * * * so the integrity of the administrative process must be equally respected." United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L. Ed. 1429 (1941). We cannot allow the recital by an administrative agency that it has considered the evidence and rendered a decision according to its responsibilities to be overcome by speculative allegations. See Willapoint Oysters, Inc. v. Ewing, *supra*, 174 F.2d at 696.

### C. *The Fact Findings Unsupported by Evidence.*

We turn to the substantive contentions of petitioner with full awareness of our limited province. When two or more applicants for certification seek mutually exclusive grants of authority, they may both be qualified and the inquiry then must be which would better serve the public interest. The Board must consider and make a relative determination and evaluation of all pertinent factors. See Johnston Broadcasting Co. v. FCC, 85 U.S.App.D.C. 40, 45–46, 175 F.2d 351, 356–357 (1949). Its conclusion—its ultimate finding in terms of statutory criteria—must be sustained if rationally related to the underlying findings made on the various factual issues. Findings of fact are conclusive on the court if they are supported by substantial evidence, Section 1006(e), 49 U.S.C. § 1486(e) (1964). However, the court must "hold unlawful and set aside agency action, findings, and conclusions found to be * * * unsupported by substantial evidence * * *." Section 10(e) of the Administrative Procedure Act, 5 U. S.C. § 706(2) (E) (see note 3 *supra*); North American Airlines, Inc. v. CAB, 100 U.S.App.D.C. 5, 9, 240 F.2d 867, 871 (1956), cert. denied, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760 (1957). Section 10(e) further instructs us that "[i]n making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.

In applying the substantial evidence test, we are obliged to search the entire record, or those parts to which the parties refer us, to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did. See, *e. g.* Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); United States v. Carlo Bianchi & Co., 373 U.S. 709, 715,

---

a member regarded himself as "qualified and prepared to vote on the issues in the case," Western Air Lines, Inc. v. CAB, 122 U.S.App.D.C. 81, 83 n. 4, 351 F.2d 778, 780 n. 4 (1965), and to demonstrate that only authorized personnel attended, North Central Air Lines, Inc. v. CAB, 108 U.S.App.D.C. 185, 190, 281 F.2d 18, 23 (1960).

6. We need not consider whether there would be any material difference if the direction given while Mr. Boyd was a member had been executed after he severed his connection with the Board.

83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). We must decide whether there is competent evidence, when viewed in light of contrary evidence that may also appear, which supports the findings upon which the agency has predicated its conclusions. See Michigan Consolidated Gas Co. v. FPC, 108 U.S.App.D.C. 409, 423 n. 41, 283 F.2d 204, 218 n. 41, cert. denied, Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co., 364 U.S. 913, 81 S.Ct. 276, 5 L.Ed.2d 227 (1960); Capital Transit Co. v. Public Util. Comm., 93 U.S.App.D.C. 194, 205, 213 F.2d 176, 187 (1953), cert. denied, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643 (1954); 2 DAVIS, ADMINISTRATIVE LAW § 16.06 (1958).

■ The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. FMC, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Particularly in a comparative proceeding we must be chary of substituting our own evaluation for that of the Board, for in these circumstances the problem of the Board is often "not so much one of resolving factual issues as of exercising its judgment." Lake Central Airlines, Inc. v. CAB, 99 U.S.App.D.C. 226, 228, 239 F.2d 46, 48 (1956); see Frontier Airlines, Inc. v. CAB, 104 U.S.App.D.C. 78, 80, 259 F.2d 808, 810 (1958).

■ None of these salutary principles of judicial restraint requires the court to accept meekly "administrative pronouncements clearly at variance with established facts." NLRB v. Morganton Full Fashioned Hosiery Co., 241 F.2d 913, 916 (4th Cir. 1957). Yet this is precisely what we have found upon inspection of the record and comparison with the Board's opinion. We cannot ignore the fundamental contradiction between the Board's assertion of fact and what the evidence clearly reveals.

■ The Board, as it is free to do, weighed the differences between the two carriers differently than the Examiner. It recognized that the case was a close one, but decided that "on balance, Eastern's selection over Braniff as the operator of the Texas-Florida route would be in the public interest and is fully warranted." (Tr. 2097) This ultimate finding was predicated on a purportedly careful analysis of various relevant factors such as historic interest, new facilities and mileage requirements, route integration, diversion. It found that Eastern's advantages in the foregoing outweighed Braniff's advantages in regard to the issues of beyond-area benefits, and carrier strengthening. Were these basic findings all supported by substantial evidence, we would have no difficulty accepting as reasonable the ultimate judgment that Eastern should be designated to serve the route.

However, the record simply does not support certain purported facts relied on by the Board. We set out verbatim the pertinent findings:

Several important and persuasive considerations dictate Eastern's selection. In the first place, in supplying the needed Florida services for Dallas/Fort Worth, Eastern has economic and operational advantages not available to Braniff. Eastern would require less new route mileage since it presently operates single-plane service over a portion of the route—namely the 200 miles between Miami, Tampa, and St. Petersburg-Clearwater. For Braniff, the Dallas-Florida route would be an entirely new operation. Eastern already serves and is well established at all of the points on the route except Dallas/Fort Worth, it has a substantial identification in Florida, and for years has been, and will be, promoting the development of the Florida vacation traffic. Braniff serves Dallas/Fort Worth and New Orleans on its domestic system, but it would be required to establish new facilities at Tampa, St. Petersburg-Clearwater, and Ft. Lauderdale and to expand its fa-

cilities at Miami, it has no identity in the domestic Florida markets, and would find it necessary to undertake an extensive advertising and promotional program to exploit its Florida service. Thus, the cost factor, insofar as existing facilities and promotional advantages are concerned, is in Eastern's favor.

While the new route would integrate operationally with both Braniff's and Eastern's systems, its integration with that of Eastern's would be superior. Since Eastern, in contrast to Braniff, serves each of the on-route cities, except Dallas/Fort Worth, on other routes, Eastern has a substantial advantage over Braniff in this respect. Such integration would allow Eastern maximum flexibility for scheduling, operations, and aircraft utilization so as to permit a less costly and more efficient operation. [Footnotes omitted.] (Tr. 2089–90).

■ On analysis it appears that the applicants focused their proposals so that the route would in fact be Dallas/Fort Worth to New Orleans to Tampa to Miami pattern. This is the way both Braniff (Tr. 768) and Eastern (Tr. 932) proposed to service the route. The Board plainly erred in referring to Braniff's need to establish "new facilities at Tampa, St. Petersburg-Clearwater, and Ft. Lauderdale" even though those cities were mentioned in the description of the route used in the order reopening the proceedings. Neither carrier was in fact proposing to serve St. Petersburg-

Clearwater or Ft. Lauderdale on this route. It was likewise impermissible to base a finding of superior route integration on Eastern's existing services of these cities when according to its schedule for the route at stake it would not stop there. Putting aside those cities that neither carrier intended to serve, we see that Eastern would have to inaugurate service and obtain new facilities at Dallas/Fort Worth, the western terminus of the route, while Braniff's burden would be to enlarge facilities at Miami, the eastern terminus, and open facilities at Tampa, an intermediate stop on the route.

Eastern's brief, apart from an unjustified effort to grasp at the straw of its temporary service as an "equity",[7] seeks to support the Board by reference to relative differences where the two carriers overlap. Eastern argues (Brief for Intervenor at 36) that "in finding that Eastern had superior operational advantages and better integration, the Board must have found favorably upon the arguments addressed to it" in Eastern's brief to the Board. Indeed, Eastern stretches backward to the brief it filed with the Examiner (*Id.* at 37, 38), for certain matters it offers to us as supporting the Board's decision. In the face of an evident mistake, we decline to infer that the Board "must" have intended the "correct" (Eastern's) reasons in support of its conclusion.

■ The Board's counsel argues the case to us by reference to the statement filed by two Board members when the petition for reconsideration was denied.

---

7. The record, if we understand it correctly, indicates that the Board rejected Eastern's interim operations as a factor affecting carrier selection, and that in this respect it adopted the findings and conclusions of the Examiner, who said (Tr. 2119):

"However, it does not follow the experience gained by Eastern gives it preferred status when it comes to selection of carrier. On the contrary, to so conclude would be highly prejudicial to Braniff and inconsistent with basic con-

cepts of fairness in the comparative evaluation of applicants."

The brief of the Board's counsel advises (Brief for Respondent at 37–38) that the Board made a like determination in Reopened Milwaukee-Chicago-New York Restriction Case, 18 C.A.B. 586 (1954), and that the Board's "customary decisional rule" is that "interim operations do not constitute a factor favoring selection for certification." Western Air Lines, Inc. Order E–24071, Aug. 12, 1966.

That statement added props to the original decision. Some of these props give us pause.[8] But the important point is that they were findings in addition to the earlier findings of the Board, and their characteristic as additions cannot be ignored by a gloss referring to them as merely "elaboration" and "spelling out" of the earlier findings. (Brief for Respondent at 18, 22). Even if it be assumed that the additional findings could be given full weight if they were findings of a majority, they were the findings of only two out of four members. Even though these two members were among the three who concurred in the June 1, 1965, decision, we are concerned with reviewing institutional decisions. Despite their personal connection with that opinion the statement of two members of an equally divided regulatory agency possesses no authoritative significance. We cannot find a substitute for valid agency explanation either in the rationalizations of Eastern's counsel on appeal, NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 443–444, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–169, 83 S.Ct. 239, 9 L.Ed. 2d 207 (1962), or the *post hoc* patchwork of individual members.

**D.** *Need for Remand*

The question now is what is the impact of this error on the award to Eastern. Section 10(e) of the Administrative Procedure Act expressly provides that reviewing courts shall take "due account" of the "rule of prejudicial error." 5 U.S.C. § 706, *supra* note 3. That Act is applicable on an overlapping basis, even where judicial review of an agency's action is expressly provided by some other enactment. 5 U.S.C. § 701. See Yale Transp. Corp. v. United States, 185 F.Supp. 96, 107 (S.D. N.Y.1960) (three-judge court, Friendly, J.), aff'd *per curiam*, 365 U.S. 566, 81 S. Ct. 754, 5 L.Ed.2d 806 (1961). Reversal is not required by the fact that an agency made an "error" if it is shown that the error was not "prejudicial." O'Kon v. Roland, 247 F.Supp. 743, 746 (S.D.N. Y.1965). Although the standards governing its application may differ, the "harmless error" principle announced for our general jurisprudence by decision and statute (*e. g.*, 28 U.S.C. § 2111 (1964)) is applicable to the review of the decisions of administrative agencies. Kerner v. Celebrezze, 340 F.2d 736, 740 (2d Cir.), cert. denied, 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965). Of course an error cannot be dismissed as

**8.** The statement on reconsideration developed the assertion that even if the number of new stations was not higher for Braniff, it would have a higher cost since "we think it reasonable to conclude" that the cost to Braniff of an enlargement at the Miami terminus and the new intermediate station at Tampa "would be more than the cost to Eastern of a new station at Dallas-Fort Worth." (Tr. 2326). We are cited to no evidence of record on this point. Moreover the members did not advert to the fact that Eastern was proposing separate stations both at Dallas and at Fort Worth (Tr. 932).

The two Board members then continued: "Certainly, there is no basis on this record for concluding that Braniff's station costs would be less." But we had understood that the question was whether Eastern had shown that it had a cost advantage—to offset the advantage of service favoring Braniff, the

"beyond area benefits" found by the Examiner, relied on by both Chairman and Vice-Chairman Murphy on reconsideration, and conceded by the original majority, though regarded as only slight in extent.

The Board's June 1 decision stressed Eastern's advantage in identity in the Florida market of destination of traffic. Braniff's petition for reconsideration claimed the Board failed to take into account its previous identity with the source of traffic. The two members stated that Eastern's advantages were greater for various reasons. They then added that Eastern "is no stranger to •Dallas/Fort Worth, having actively participated in the carriage of Dallas/Fort Worth passengers for many years." (Tr. 2329). The significance of this reference is not clear, especially if the current vitality of any such consideration is ascribable to Eastern's interim operations. (See note 7 *supra*).

"harmless" without taking into account the limited ability of a court to assume as a judicial function, even for the purpose of affirmance, the distinctive discretion assigned to the agency. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947).

■ The Supreme Court's opinions reflect the concern that agencies not be reversed for error that is not prejudicial. Thus the Court refused to upset an order referring to the wrong statute, when the error had no bearing as to the relevant criteria or procedure. The principle of SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760 (1947), does not mechanically compel reversal "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." Massachusetts Trustees of Eastern Gas and Fuel Associates v. United States, 377 U.S. 235, 248, 84 S.Ct. 1236, 1245, 12 L.Ed.2d 268 (1964).

■■ A court will not reject an agency finding that is supported by substantial evidence merely because the agency also incidentally mentions incompetent or irrelevant material. Thus, in dealing with an agency's "official notice", in an incidental or verifying reference, of matter outside the record, the courts do not "make a fetish of sticking squarely within the four corners of the specific record in administrative proceedings * * * unless substantial prejudice is shown to result." United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 530, 66 S.Ct. 687, 695, 90 L.Ed. 821 (1946). Likewise, the possibility of prejudice from the admission of incompetent evidence may be dispelled by showing that the matter involved was not relied on. Sisto v. CAB, supra, 86 U.S.App.D.C. at 35–36, 179 F.2d at 51–52; Willapoint Oysters, Inc. v. Ewing, supra, 174 F.2d at 686–687.

■ A more serious type of error is presented where the agency makes a finding not supported by any evidence.

Even here if the finding is demonstrably subsidiary and the agency does not purport to rely on the finding, remand is not called for unless there is a "solid reason to believe that without that subsidiary finding the agency would not have arrived at the conclusion at which it did arrive." Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, 67, 81 S.Ct. 1357, 1395, 6 L.Ed.2d 625 (1961). Where a subsidiary finding is unsupportable or otherwise erroneous but the court is clear that its presence was not material to the ultimate finding, reversal is not appropriate. See NLRB v. Reed & Prince Mfg. Co., 205 F.2d 131, 139 (1st Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953), where the court held it unnecessary "to sustain the Board on each and every one of its subsidiary findings of fact," the case being one where the more significant underlying facts were not in dispute. A court will affirm if it appears that "all the *important* basic findings made by the [Board] are supported by substantial evidence on the whole record." M. & M. Transp. Co. v. United States, 128 F.Supp. 296, 302 (D.Mass.), aff'd *per curiam*, 350 U.S. 857, 76 S.Ct. 102, 100 L.Ed. 762 (1955). (Emphasis added.)

However, in *Reed & Prince* the court expressly recognized that remand may be appropriate when "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous findings or inferences removed from the picture." 205 F.2d at 139.

■ Moving to an application of these principles, we cannot say that the error here was harmless. The Board in its June 1965 opinion declared that "several important and persuasive considerations dictate Eastern's selection." The first two considerations that it turned to for discussion at some length—facilities and route integration—rested on an unfounded view of the underlying relevant facts. If we remove from consideration the element of new stations, as we think on this record we must, we cannot find

other substantial evidence to shore up the Board's findings on these two issues.

Focusing to these facts the relevant principles already discussed, we are not here concerned, as was the Court in Communist Party of United States v. Subversive Activities Control Board, *supra*, with a finding on which the agency did not purport to rely. In some cases the agency's reliance on erroneous evidence or findings must rest on inference—justified in appropriate cases from express reliance thereon by the examiner whose order is being affirmed and lack of any sign of agency disavowal of his approach. See Harvey Aluminum, Inc. v. NLRB, 335 F.2d 749, 755 (9th Cir. 1964). Here no inference is necessary. The agency said in so many words that it was taking into account the findings that later proved erroneous, and we have no reason for disputing this. Compare NLRB v. Johnson, 310 F.2d 550, 552 (6th Cir. 1962).

We turn then to the question whether the erroneous findings were crucial, whether the agency would have reached the same result if it had not made these erroneous findings. This is the type of issue on which we think it is appropriate to insist on further guidance from the agency. We are at least in substantial doubt on the issue. See NLRB v. Reed & Prince Mfg. Co., *supra*, 205 F.2d at 139. Whether or not they were critical or decisive, the two factors involved, discussed at length by the Board as they were, would seem to have been "important." Whether an agency's error is prejudicial may turn on whether the case was "close." Harvey Aluminum, Inc. v. NLRB, *supra*, 335 F.2d at 755; *cf.* Cross v. United States, 122 U.S.App. D.C. 283, 353 F.2d 454 (1965). That this was a "close" case was expressly stated by the Board in so many words, and it is not irrelevant that the Board

was rejecting the recommendation of its staff and reversing the decision of its examiner.

Reconsideration is the obvious opportunity available to an agency *to cope with defects appearing on its first consideration.* Indeed a court may not ordinarily consider errors that petitioner has failed to bring to the agency's attention.[9] But repair carpentry cannot be wrought on reconsideration unless the agency addresses itself to the defects. The mere addition of another ground of decision does not establish that the defect in the initial findings was stripped of continuing prejudice. See Michigan Consolidated Gas Co. v. FPC, *supra*, 108 U.S.App.D.C. at 425, 283 F.2d at 220.

Here, however, the Board denied reconsideration. Patchwork commentaries featured the opinion subscribed by two members, but as was already noted this was not the opinion of the Board. The difficulty is exacerbated by the fact that a central part of their discussion consisted of observations concerning the cost implications of the evidence. These observations, which were not adverted to in the Board's decision, manifestly do not have the status of findings supported by the expertise of the Board.

We do not say that the June 1, 1965, order was necessarily invalid because of the mistakes already noted. Our ruling is that the March 7, 1966, order denying reconsideration must be set aside. In view of the serious problems raised with respect to the June 1, 1965, order, it was the duty of the Board to grant reconsideration. It was the Board's duty to consider whether the errors were material in the overall analysis. Two members did, but the other participating members did not consider the point.[10] In the circumstances it was their duty to do so. They may well have

9. See 49 U.S.C. § 1486(e) (1964).

10. We cannot speculate that their failure to discuss this matter was an implied finding one way or the other. Nor need

we consider the legal situation that would have resulted if they had refused, expressly or by implication, to pass upon the materiality of the errors that had been made.

been willing to concede, although they felt Braniff was the superior choice, that the reason for a choice one way or the other was not decisively affected by the mistakes of the Board in its June 1, 1965, decision. The Board is "an institutional agency and the appeal must be to the institution, not to the personal predilection of the individual members." T.S.C. Motor Freight Lines, Inc. v. United States, *supra*, 186 F.Supp. at 784; cf. Eastland Co. v. FCC, *supra*, 67 App.D.C. at 318–320, 92 F.2d at 469–471.

■ The decision whether or not to limit the scope of the proceedings on remand [11] involves the sound discretion of the reviewing court. In the circumstances of this case, we do not interject such a limitation. We enter judgment setting aside Order E–23330, of March 7, 1966, which denied reconsideration and terminated the postponement of the effective date of the certificate, and remanding for further proceedings not inconsistent with this opinion.

■ We address ourselves to the question whether our order of remand will permit the broad investigation already scheduled by the Board. We think it appropriate that we address ourselves to that question in view of fundamental principles of the relations between the courts and the agencies placed by Congress under limited court review. That relationship embraces a quality of coordination, and not merely of review. In the words of Justice Stone, see United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 83 L.Ed. 1211 (1939):

> [C]ourt and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the

other in securing the plainly indicated object of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through coordinated action.

■ We have the benefit of the memoranda presented to us on the permissibility of remand. We need not consider whether CAB v. Delta Air Lines, Inc., 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961), would permit remand where the carrier had commenced operations pursuant to a certificate that had already become effective by an order we deemed valid. That is not our case. Although we have not held invalid Order E–22252, of June 1, 1965, granting the certificate, the effective date of the certificate was stayed by Order E–22492, of July 30, 1965. We are vacating Order E–23330 of March 7, 1966, which purported to deny reconsideration and terminate the extension of the stay directed by the Order of July 30, 1965. Eastern's operations prior to March 7, 1966, were pursuant to an order that this court held invalid in 1962, and have been continued under what is in effect a temporary certificate. *Delta* of course does not prohibit termination of temporary certificates.[12] The operations since March 7, 1966, reflect Order E–23330, which must be vacated. Thus these operations stand as sanctioned only by a temporary certificate while the Board is reconsidering Order E–22252, and it has decided, as it may, to "postpone the effective date until all differences have been resolved." (CAB v. Delta Air Lines, *supra*, 367 U. S. at 329, 81 S.Ct. at 1621). On remand the case will be before the Board as if upon petition for reconsideration, with

---

11. We have frequently remanded agency cases with specific directions, see *e. g.* Western Air Lines, Inc. v. CAB, 122 U.S. App.D.C. 81, 86–87, 351 F.2d 778, 783–784 (1965); Pacific Far East Line, Inc. v. FMB, 107 U.S.App.D.C. 155, 158, 275 F.2d 184, 187, cert. denied, 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1523 (1960);

Fleming v. FCC, 96 U.S.App.D.C. 223, 226, 225 F.2d 523, 526 (1955), and we have no reservations about our statutory power to do so. Compare Consolo v. FMC, 383 U.S. 607, 621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

12. See 367 U.S. at 329, 81 S.Ct. 1611.

the effective date of the certificate stayed *pending reconsideration.* We do not think *Delta* bars a consolidation of the pending docket for consideration with an investigation of broader scope and inter-related routes. Meanwhile Eastern may continue to serve the route.

The Board's Order E–23330 is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.