**DAVID B. LILLY COMPANY, INC., for itself and as Successor in Merger to Delaware Fastener Corp.**

v.

**The UNITED STATES.**

No. 332–77.

United States Court of Claims.

Feb. 22, 1978.

Burton A. Schwalb, Washington, D. C., attorney of record, for plaintiff. Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., of counsel.

Bernard M. Brodsky, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before DAVIS, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges, en banc.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KUNZIG, Judge.

The sole question in this Renegotiation Act case is whether certain orders of the Renegotiation Board (the Board) are valid. Plaintiff, by petition filed in this court on June 10, 1977, alleges (among other asserted grounds, not now before us, for upsetting the Board's determination) that the Board's orders are invalid for lack of a quorum on the date they were signed and mailed. Defendant now moves for partial summary judgment on that question alone. We find on the stipulated facts that four members of the Board, by unanimous vote, determined the amount of excessive profits, approved the final opinion, and directed that the orders be issued. We hold that, for the limited purpose of determining the validity *vel non* of the orders, they became "final" on the date the Board's deliberate process concluded which, in this case, occurred not later than February 6, 1977—five days after the vote. We further hold that the subsequent actual issuance of the orders had been properly delegated to the chairman of the Board and that a quorum was not necessary on the issue date.

There is no dispute as to the facts in this case. Plaintiff has been engaged in renegotiation proceedings with respect to its fiscal years 1967, 1968, and 1969. In connection with these proceedings, a duly constituted

quorum[1] of the Board met on February 1, 1977. The minutes reflect that four Board members determined the amount of excessive profits, considered and approved a proposed final opinion, and directed that the opinion be mailed to plaintiff, together with unilateral orders reciting each fiscal year's determination (adjusted for appropriate tax payments). Subsequently, on or about March 4, 1977, three of the Renegotiation Board members resigned. On March 15, 1977, after the resignations and before new members had been appointed, Chairman Chase signed and mailed the orders, as previously directed, to plaintiff.

Plaintiff brought suit initially in the U.S. District Court for the District of Columbia contending that the Board orders are a legal nullity because of the absence of a quorum on March 15, 1977. The District Court suit was dismissed on June 9, 1977 on the grounds that the Court of Claims has exclusive jurisdiction over the cause. Plaintiff then filed suit in this court, again asserting that the orders are invalid and joining to that claim certain other substantive exceptions not presently before the court. Defendant moved for partial summary judgment, limiting its motion to the sole issue of whether the Board's orders are valid.[2]

Plaintiff argues that the Renegotiation Act of 1951, as amended (the Act) provides that the Board must perform its functions through a quorum of three of its members. 50 U.S.C. App. § 1217(b) (1970). On the stipulated facts of this case, plaintiff contends, these orders were not issued until March 15, 1977, at which time a quorum of three did not exist. Plaintiff urges that the orders are not final until issued, that the Board cannot delegate its power to issue orders, and, therefore, that the orders are void.[3]

Defendant concedes that the orders were not issued until March 15, 1977, but focuses our attention on the Renegotiation Board meeting and vote of February 1, 1977. Defendant argues that since the Board acted through a quorum on February 1 and did not alter or amend the orders within the next five days, those orders issued on March 15 are valid. Board practice, defendant notes, is that the chairman signs the orders. Defendant urges that such practice is a permissible delegation of ministerial acts after the deliberative process has ended and that no quorum is necessary on the date that the chairman merely signs orders as previously directed.

■ We agree with defendant and hold that these orders are valid. The orders became "final," for the limited purpose involved here, when the Board concluded its deliberative process. The issuance was properly delegated by the Board to its chairman and no quorum was necessary on the date of issue.[4]

The focus of our analysis should be directed initially to the administrative fact-finding and adjudicative process (the "deliberative process"). The language of the controlling statute states:

. . . Three members of the Board shall constitute a quorum, and any power, function, or duty of the Board may be

1. The Board consists of five members; a quorum consists of three. 50 U.S.C. App. § 1217(a) & (b) (1970).

2. This case was previously before the court on defendant's motion for expedited briefing and decision (August 2, 1977 being the last possible date for renegotiation for the fiscal years involved in this case). The Motion for Expedited Briefing and Decision was denied by this court on July 12, 1977.

3. If void, plaintiff asserts, this court would have to call for additional briefing on the validity of certain "Ratification and Contingent Or-

ders" (*see* note 4, *infra*) which the Board issued later.

4. We have learned, from defendant's response brief, that the orders in question have been again issued, as "Ratification and Contingent Orders," on July 29, 1977 (there being a quorum on July 29). This prudent effort to preserve the Board's power to act should this court have decided the other way (the last date for renegotiation in this case was August 2, 1977) does not render the question moot. The July 29 ratification does not, by its terms, become effective unless and until the earlier orders are found to be invalid by a court.

exercised or performed by a majority of the members present if the members present constitute at least a quorum. 50 U.S.C. App. § 1217(b) (1970).

Thus, if a quorum exists at the time the deliberative process is completed, the language of the statute is satisfied, the Board *has* exercised its "power, function, or duty" *at that point.* Our concern (and that of the statute) is with the integrity of the deliberative process through which the Board acts. Plaintiff has a right to present his claim to a quorum of the Board; he did so. A quorum of the Board must fully consider the claim; it did so. The statute requires no less, but neither does it demand more. Plaintiff has had a full and fair hearing; and one such hearing is certainly sufficient. To hold otherwise would go beyond the words of the statute, would exalt form over substance, and would create a real likelihood of administrative chaos not to mention the potential for manipulation of results. All this in a situation where plaintiff has suffered no injury.

In the instant case, the deliberative process was complete either upon the date of the vote (February 1, 1977) or upon the expiration of five days thereafter (the Board follows an internal memorandum which limits the time for Board member comments concurring or dissenting to five days. Memorandum from Assistant General Counsel-Secretary to Chairman of Renegotiation Board regarding instructions on preparation of minutes.) Because there was a quorum on both dates it is sufficient for us, to uphold these orders, merely to find that the Board completed its action on or before February 6. Since the parties have agreed that the Board acted on February 1, and since we hold that the deliberative process was concluded no more than five days later, it follows that the orders are valid. *See Braniff Airways, Inc. v. C. A. B.,* 126 U.S.App.D.C. 399, 405, 379 F.2d 453, 459 (1967).

We emphasize that our holding is simply that these orders became valid on or before February 6, 1977. Plaintiff calls our attention to cases which involve judges changing their minds after preparing but before issuing opinions. In the instant case, however, the Board did not change its mind or its membership within the five-day period. Since, pursuant to its internal memorandum, neither the old Board nor the new Board could reverse the orders after the expiration of the five-day period, plaintiff's cases are inapposite.

Plaintiff vigorously argues that an order can become "valid" *only* when it becomes "final" for purposes of seeking overall judicial review. This argument is not well taken. Certainly, some knowledge of the substance of the orders must "to some extent be made manifest" for substantive rights to be defined and for the time for seeking review to begin to run. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 676, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Though that knowledge did not occur in the instant case until the orders were signed and mailed on March 15, 1977, such a consideration is not relevant here. Knowledge of the contents of the order or receipt thereof by the renegotiated contractor is totally immaterial to the problem we face here. What is important is the completion of the "deliberative process." [5]

We turn now to the remaining issue which is whether, once having acted through a quorum, the Board could then properly delegate the actual issuance of the implementing orders.

The same statute which provides that the functions of the Board be exercised by a quorum also permits of delegation:

(d) Delegation of powers.

The Board may delegate in whole or in part any function, power, or duty . . to any agency of the Government, including any such agency established by the Board, and may authorize the successive

5. *See AFL–CIO v. Bingham,* 187 U.S.App.D.C. ——, at ——, 570 F.2d 965, at 969 and note 6 (1977) (determining the "validity *vel non* of an order" involves different considerations than those concerned in determining finality for purposes of seeking review).

redelegation, within limits specified by it, of any such function, power, or duty to any agency of the Government, including any such agency established by the Board. . . . 50 U.S.C. App. § 1217(d) (1970).

Though admittedly, in this instance, the delegation was not accomplished by an actual, specific regulation, there is nothing to indicate that a regulation is necessary. When a quorum of the Board directed, at its February 1 meeting, that the orders issue, the delegation occurred then and there. Such delegation is consistent with the statutory language, with Board practice, and is supported by common sense.

Plaintiff insists that the Board cannot delegate its power to issue orders because such issuance requires the exercise of discretion.* Plaintiff claims support for its position in the "extensive and elaborate" procedures used by the secretary in drafting orders pursuant to the Board's direction. But the elaboration and attention to detail in obtaining figures to be put in the blanks does not transform a ministerial act into something else.

The Board has not delegated its responsibility to determine the amount of excessive profit realized nor its responsibility to render the final opinion. What has happened here is that, after having determined the excessive profit and after having approved the final opinion, the Board left it to the chairman and secretary to issue the orders in the amount directed and to mail those orders. Neither the chairman nor the secretary did anything more than implement the February 1, 1977 Board directive.

Preparation of the orders, as explained by the Government's briefs and exhibits without contradiction, is an essentially mechanical function of filling in the blanks on pre-printed forms. The amount of excessive profit having been already fixed by the Board, the adjustment for taxes is automatically made by the staff, and the figures are entered. Though entry of the tax credit may be made with great care, it remains a function clerical in nature; the overall preparation of the form is standard and

ministerial, hence capable of delegation. So is the mailing.

Nor is the delegation defeated, as plaintiff urges, by the fact that it remained unexercised until March 15—after the resignation of Board members who had made the delegation. We need not decide what might be the effect had the Board been dissolved completely. The Board is a continuing body and remained so throughout the period. In light of this circumstance, the assertion that the delegation was extinguished before implemented is simply untenable.

Accordingly, upon consideration of the briefs and exhibits, and after oral argument, defendant's motion for partial summary judgment is granted and the corresponding part of plaintiff's petition is dismissed. This case is remanded to the trial division for further proceedings on the remainder of the petitioner.

NICHOLS, Judge, with whom BENNETT, Judge, joins, dissenting:

Respectfully, I dissent. In my view, this holding contravenes the well-known rule that no one can participate in the decision of a tribunal of which he is not a member on the effective date. That proposition will not be disputed, I suppose. It is well recognized in the practice of courts. Thus, one of our judges who voted for a decision or even prepared it would not be recognized as participating if he died before the promulgation date. It would issue on the authority of the survivors of the original panel, not that of the deceased member. In a different situation I observed the same rule at some personal inconvenience, having deferred my resignation from the Customs Court and my swearing into this court in order to permit four decisions of the former tribunal to issue and be valid. I never supposed I could resign and still have them come out under my name. Yet that is in effect what the resigned members of the Renegotiation Board are attempting to do here.

The court avoids a direct challenge to that rule by asserting that the effective

date was, alternatively, February 1 or February 6. It is not denied that the statute fixes the final date for the purpose of taking appeal as the date of the order, here March 15. That is the date after which the order is "final," 50 U.S.C. App. § 1215(a)(1), that must occur within two years after "commencement," or any extension thereof, 50 U.S.C. App. § 1215(c), and that starts the running of interest, 50 U.S.C. App. § 1215(b)(2). The meeting and vote of February 1 is a useful and necessary preliminary, no doubt, but it is as unknown to the statute as our "decisions" conferences are to the judicial code. The court gets around this by saying that there can be two or more effective dates for different legal purposes and that the members then on the Board could authorize the order to be prepared and issued as a ministerial act. Of course, the court can conjure up any number of effective dates if it chooses. No further action by the Board members was required, after February 6, and if they had remained in office, the signing and issue would indeed have been ministerial, but in my view, when done, it would have been their action, not that of the chairman alone who signed for them. With their resignations, it ceased to be ministerial. In a similar manner, in the period between our decisions conferences and our decision days, ministerial acts only are performed, namely, printing and proofreading, but still we all speak as of the date at the top of each opinion. The natural relationship of the Board's meetings with its promulgation dates would seem to be the same as ours. The scheme the court proposes is artificial and unnatural.

In oral argument we had much theory and discussion of hypotheticals. Defendant took the view it was forced by the logic of its position to take, that after February 6 the order was final in the sense that neither the old Board, had it remained, nor the new one, if appointed before March 15, could have stopped the promulgation and taken the case under reconsideration. It certainly would have shocked the hypothetical new board to be told the chairman had orders he was about to issue, as to which they had no

say. They might well have asked how an order not yet issued could be final against them when by express statutory language it was not yet final against anybody else. In a more practical vein, they might have asked how they could explain to their disappointed admirers that a secret meeting, six weeks earlier, with a procedure unpublished and unknown, that allowed only five days for concurrence or dissent, had relieved them of all responsibility for whatever errors an order might contain, that was issued after they had ostensibly become full members.

It would be better practice, I think, if preparation of the order is as ministerial as alleged, to have it ready at or shortly after the Board votes on it, and put it out forthwith. But if situations like this are to recur, it certainly seems better to allow resignations and new appointments to have their natural and normal effect, for old members whose resignations are accepted, to cease immediately being responsible for anything done in the Board name thereafter, and for the new ones to be fully responsible for everything done in the name of the Board thereafter. The disturbance of this natural order of things by assigning a specious finality to a vote at a secret and unpublished meeting, seems to me as ill advised practically as it is questionable legally.

It was suggested that new members might have difficulty acquainting themselves with old cases in the necessary time, and it was apparent, if its position prevailed, plaintiff was preparing to insist on reopening this case, while holding out on agreement to necessary extensions of time. It is to be remembered, however, that due process is not required in renegotiation at the Board level. The law would, I believe, look kindly on anything the Board might deem it necessary to do to prevent limitations running. To be more specific, I would have proceeded to consider the "Ratification and Contingent Orders" referred to in Judge Kunzig's footnote 4. We do not know what plaintiff can urge against them. I think we should have considered both sets

of orders at once, but we did not. I can only say, therefore, that it would have taken a lot to convince me that the later set were invalid. As regards the practical outcome of this case, there is not much difference between the court and me, but my analysis I think would furnish a better guide for the future.